A04A1919. NIAKO v. THE STATE.
(609 SE2d 154)

MIKELL, Judge.

Following the denial of his motion to withdraw his guilty plea, Jean Eric Niako appeals, maintaining that the trial court abused its discretion in denying his motion because his plea was neither intelligent nor voluntary but, instead, the result of fear, confusion, and intimidation by the process. For the reasons set forth below, we affirm.

On November 20, 2002, Niako was indicted for four counts of aggravated assault, two counts of kidnapping, four counts of impersonating an officer, and one count each of burglary, entering an automobile with intent to commit a theft, obstruction of a law enforcement officer, and possession of marijuana. Trial commenced on October 13, 2003. After two victims testified for the state, Niako pleaded guilty to four counts of aggravated assault, two counts of

kidnapping and four counts of impersonating an officer, and entered an *Alford* plea on the charge of entering an automobile with intent to commit a theft. In return, the state nolle prossed the remaining three counts of the indictment. The trial court sentenced Niako to twenty-five years, with ten to be served in confinement and the balance on probation. Niako also was advised that he could be deported upon completion of his sentence.[1]

On October 21, 2003, Niako filed a motion to withdraw his guilty plea, alleging that he was afraid, confused and intimidated by the process, and that the two witnesses for the state "had gotten too creative in their testimony" and defense counsel did not do a good job questioning them. New counsel was appointed to represent Niako on his pending motion. After conducting a hearing, the trial court denied the motion to withdraw the guilty plea, finding that Niako "had ample opportunity to discuss the plea with his attorney; and, in fact, his plea was entered after trial had already commenced and he had an opportunity to hear a good portion of the [s]tate's case." This appeal followed.

In his sole enumeration, Niako contends that the trial court erred in denying his motion to withdraw his guilty plea, arguing that the plea was not knowing and voluntary but, instead, the result of fear, confusion, and intimidation by the process.

> When a defendant enters a plea of guilty, and subsequently challenges the validity of the guilty plea, the state may meet its burden of demonstrating that the plea was intelligently and voluntarily entered by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea. The trial court is the final arbiter of all factual issues raised by the evidence, and after sentence is pronounced a guilty plea may be withdrawn only to correct a manifest injustice.[2]

The trial court's ruling on a motion to withdraw a guilty plea after sentence is pronounced will not be disturbed on appeal absent a manifest abuse of discretion.[3]

A review of the record shows the following: Niako's trial began on October 13, 2003. Oleg Lisyuk, a Russian immigrant and the state's first witness, testified that on the evening of July 5, 2002, Niako

---

[1] Niako is a native of the Ivory Coast. He was in the United States pursuant to a green card.

[2] (Footnote omitted.) *Young v. State*, 267 Ga. App. 91 (598 SE2d 840) (2004).

[3] See *Jones v. State*, 268 Ga. App. 723, 724 (1) (603 SE2d 73) (2004).

approached him and his father-in-law in the parking lot of Lisyuk's apartment complex. Niako pointed a pistol at both men, told them he was a policeman, a terrorist and an Arab, and forced them to walk to Lisyuk's apartment, where Lisyuk's wife, Innassa, her mother, and her brother were putting Lisyuk's two young children to bed. Niako waved the gun at everyone and told them to lie down in the living room. Lisyuk managed to dial 911 on a cordless telephone and then placed the telephone on the couch, where his one-year-old son picked it up. Innassa took the telephone from the child and hung it up. Several minutes later, the telephone rang and Innassa placed it on speaker. When a police officer spoke and said "we are coming," Niako gave Lisyuk's son a "high five" and left. At trial, Lisyuk positively identified Niako.

Innassa Lisyuk, the state's second witness, confirmed her husband's testimony. She stated that Niako entered the apartment holding a gun. He pointed the gun at everyone in the apartment and told them to get down. At trial, Innassa positively identified Niako.

On the morning of October 14, 2003, the trial court inquired about the status of plea negotiations and urged defense counsel and Niako to consider seriously the state's latest offer. After a lunch break, where the state offered a plea of twenty-five to serve ten, Niako asked to speak to the court and stated that "[t]he indictment says that I . . . committed the offense of aggravated assault by pointing a pistol. . . . [I]t takes more than just pointing [a] pistol to make an assault. Why — why wasn't I charged with a — a reckless conduct? . . . The gun has to go off — the gun has to go off . . . for the case to be. . . ." Niako then chose to continue with the trial. Before the jury returned to the courtroom, however, defense counsel asked to speak with his client, which request the trial court granted. Defense counsel and Niako met in private and then returned to the courtroom where Niako stated that he would accept the state's last offer, but then again asked to speak privately with counsel. The court granted Niako's request and further advised him that there should be no pressure on him to plead guilty and that he is entitled to a trial. The court also advised Niako that he would have to admit to the facts as outlined by the state in opening statements. Finally, the trial court stated: "[O]nly you can make the decision as to whether or not you enter the plea. We're ready to go forward as soon as you're comfortable in doing so. So if you need to talk to [defense counsel] again, go ahead and do that. But get your questions answered; okay?" Niako returned to the courtroom and indicated that he was prepared to go forward with the plea.

At this point, the state went through the individual indictments, relating the crimes charged in each count of the respective indictments, the minimum and maximum sentences which each crime

carried and the factual bases for the plea. Niako indicated that he understood the various charges, and the sentences each charge carried. Niako next indicated that he understood that he had a right to a trial by jury and a presumption of innocence, and the right to testify in his own behalf, subpoena witnesses, and cross-examine the state's witnesses. In addition, he stated that he understood that he had a right to an attorney and the right not to incriminate himself, and that the judge could impose any sentence allowed by law. He further stated that he understood that by entering a plea he was giving up those rights. Niako denied that he was under the influence of any drug or alcohol, or that he had been threatened or coerced into entering a plea. He acknowledged that he was entering the plea freely and voluntarily. When asked whether he was satisfied with his attorney, Niako responded, "[s]omewhat, yeah." Niako agreed with the state's attempt to clarify his response: "With regards to your lawyer, you just — 'somewhat' because of the fact that you don't like the nature of the facts and the information that you're provided in this case?" Finally, Niako stated that he could read, write and understand English, and that he had attended college.

The state then asked Niako if he wanted to enter a plea of guilty on all charges and Niako responded, "Yes." As to the offense of entering an automobile with intent to commit a theft, Niako entered an *Alford* plea. The state next asked Niako if he committed four counts of aggravated assault and he responded, "[b]y pointing a pistol, yes, sir." The state then asked Niako if he committed two counts of kidnapping and he responded, "No." At this point, the trial court granted defense counsel's request to speak with his client. After they returned, the state again asked Niako if he committed the offenses of kidnapping and he again responded, "No." The court advised Niako that since he could not admit to the kidnapping, the trial would resume, to which Niako responded, "[h]old on." When the court again advised Niako that he could not accept the plea if Niako could not admit to committing the offenses, Niako responded, "It's — it's just that that says something — something that I didn't do. So I'm kind of — I'm kind of — I can't believe [Innassa] got — they got them to stand there and got a little bit too creative. That's why I'm kind of — kind of shaken a little bit." The trial judge again told Niako that he would have to admit to the offenses in order for the court to accept his plea, and assured Niako that the court understood if he could not admit and that the court was prepared to resume the trial. When Niako stated that he was "going to admit to it because I'm pleading," the following discussion took place:

THE COURT: You've got to admit to it because you, in fact, did it. If you didn't do it, then the only choice we have . . . is

to go forward with the trial of this case. . . . If you have any reservations about making that admission, we cannot go forward with this plea.

[NIAKO]: Your Honor, we got — you had — you had four people in that apartment that — that — that are probably going to — they are going to come on the stand and — and — and say that I did do what they implied. So it's really four against one. . . . Saying that I — I did do something that I didn't do. . . . So I'm going to go ahead and — and — and take the plea.

THE COURT: Well, I understand you want to do that. But, see, I've got some things — in order for me to accept your plea, I've got to make sure that there is, in fact, a basis to accept your plea. You admitted as to the — what happened in the apartment. You've admitted that.

[NIAKO]: Yes, Your Honor.

THE COURT: Okay; but we're now to the point of the kidnapping. . . . And so in order for me — and I'm not trying to tell you what to do. But in order for me to accept your plea, you've got to admit that you did that. If you're not in a position to admit that, again, I understand, and we will go forward with the trial. . . . In order for me to accept the plea, you've got to admit that you did that, without reservation. And if you're not prepared to do that, then the only choice that we have is to go forward [with] this trial, which is fine. There is not a problem with that. . . . [Y]ou [must be] willing to say, "I admit to what the [s]tate says I did."

[NIAKO]: I admit, sir.

Finally, Niako admitted to four counts of impersonating an officer. The trial judge then accepted Niako's plea and imposed sentence.

At the hearing on the motion to withdraw the guilty plea, Niako's trial counsel testified that he met with Niako several times before trial; that Niako understood the facts and the evidence against him but believed that the state should have indicted him for the misdemeanor charge of pointing a pistol; that he reviewed the penalty ranges for each charge with Niako; and that he communicated the state's plea offer to Niako and explained that if he went to trial and lost, the offer would be withdrawn. On the morning of trial, Niako again insisted to trial counsel that he might be guilty of a misdemeanor charge. Trial counsel advised Niako that even if the state dismissed all the charges involving the Lisyuks, he still would be facing a possible 17-year sentence. After the trial judge asked about

plea negotiations, trial counsel recalled meeting several times with the state and Niako about the plea offer before Niako decided to enter a plea.

At the motion hearing, Niako told the court that he was not guilty of the charges, that he wanted to withdraw his plea, and that he pled guilty because he was confused and scared. Though Niako understood his options, i.e., enter a plea or go to trial, Niako chose to go to trial because trial counsel told him that the state might drop the aggravated assault charge to a misdemeanor. Niako further testified that trial counsel told him that the state offered a sentence of "[t]en do six," but stated that he did not understand what that meant. Niako told the court that after Lisyuk and Innassa testified, "everything happened fast . . . too fast," that he was confused and did "not really" understand what was going on, and that trial counsel was not asking the right questions.

The plea transcript "reflects a careful inquiry by the court showing that [Niako] fully understood the nature of the charges, the consequences of his plea, and the rights he was relinquishing."[4] Moreover, any contradiction between Niako's testimony during the plea hearing and his testimony during the motion hearing is a matter of witness credibility, which the trial court was authorized to decide against him.[5] As the record shows that Niako knowingly, intelligently, and voluntarily entered his guilty plea, the trial court did not abuse its discretion in denying the motion to withdraw the plea.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 6, 2005.

*Brown & Gill, William L. Gill*, for appellant.
*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.

---

[4] (Citation and punctuation omitted.) *Jones v. State*, 265 Ga. App. 584, 587 (1) (594 SE2d 761) (2004).

[5] See *Pike v. State*, 245 Ga. App. 518, 522 (1) (538 SE2d 172) (2000) (where child molestation defendant acknowledged at the plea hearing that he could receive 110 years in prison, but then testified at the hearing on the motion to withdraw guilty plea that he believed that he would receive five years or even a probated sentence, trial court was authorized to resolve conflict in testimony against defendant).