## A09A1431. GRESHAM v. THE STATE.

(684 SE2d 336)

ADAMS, Judge.

Terrell Gresham appeals the denial of his motion to withdraw his guilty plea to charges of burglary and possession of tools for the commission of a crime. He contends his court-appointed lawyer was ineffective and withdrawal is necessary to correct a manifest injustice. We affirm.

The decision regarding whether a guilty plea may be withdrawn lies within the sound discretion of the trial court. *Franklin v. State*, 291 Ga. App. 267, 268 (661 SE2d 870) (2008). And when the request to withdraw a plea is based on ineffective assistance of counsel, "the defendant bears the burden of showing that, had it not been for his attorney's deficient representation, a reasonable probability exists that he would have insisted on a trial." (Citations and punctuation omitted.) Id. See also *State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003) (deficient performance and prejudice). The trial court is authorized to determine the credibility of witnesses at the hearing on the motion to withdraw, and the court's factual findings will be upheld unless they are clearly erroneous. *Johnson v. State*, 260 Ga. App. 897, 900 (2) (581 SE2d 407) (2003).

Here, the trial court found that the court "went to great lengths to assure that the defendant understood and admitted the factual basis of his plea, that he was satisfied with and had had adequate time to confer with his trial counsel, and that he was proceeding voluntarily." The court expressly found that Gresham's testimony to the contrary was not credible. Accordingly, the court concluded that Gresham "made a knowing, voluntary, and intelligent waiver of his rights and knowingly, voluntarily and intelligently entered his plea of guilty." We find that although some aspects of trial counsel's representation were problematic, the record and the transcript of the hearing on the motion to withdraw support the trial court's findings.

The record shows that Gresham was indicted on June 22, 2007 and charged with burglary and possession of tools for the commission of a crime. In the charges against him it was alleged that he and a co-defendant entered an old nursing home without authority and with intent to commit a theft by entering the cellar/crawlspace area with the intent to remove copper piping and that they were interrupted during the theft. Gresham pleaded not guilty on July 11, 2007; he was represented by Ryan Swingle at the time. On July 13, Swingle filed a motion to suppress, and on September 28, he filed three motions in limine and a motion to exclude eyewitness identification. But on October 26, 2007, S. Brett Mizerak was substituted as counsel of record for Gresham.

Over nine months later, on August 12, 2008, the morning after a

jury had been impaneled, a plea hearing was held. The prosecutor reviewed the alleged facts in the case. The allegations were that an officer saw a "suspicious white Astro van parked partially in the road" and saw two large cutting tools in the rear of the van. A neighbor had seen two white males get out of the van and walk toward an elementary school. While the officer ran the tag, the co-defendant walked up and explained that it was his van, and it was broken down. When the tag came back not stolen, the co-defendant was allowed to leave. A second eyewitness called in and said she saw another man run from the wood line and get into the van at the same location. The officers, who obtained the co-defendant's address in the initial encounter, went to the co-defendant's home and found Gresham and the co-defendant there. In a *Mirandized* statement, the co-defendant stated that he and Gresham were going to the old nursing home to take copper out of the building and that they had previously taken some mantels and were going back for the metal frames that go into the fireplaces. At the plea hearing, Gresham admitted that these facts were true.

The court then thoroughly questioned Gresham regarding his plea and the written plea agreement. In every instance, Gresham's answers indicate that his plea was knowingly and voluntarily entered into. In particular, Gresham answered that he was "very" satisfied with his attorney and that he had enough time to talk with his attorney about the case. Accordingly, the court accepted the plea and sentenced Gresham.[1] Gresham has no complaint about the thoroughness of the plea hearing itself.

On September 8, 2008, the court received correspondence from Gresham in which he complained that he was forced into entering a plea because Mizerak had failed to meet with him, failed to appear in court several times in connection with his case, failed to respond to correspondence and telephone calls, and completely failed to prepare for trial. Accordingly, he asked to withdraw his plea. New counsel was appointed and a hearing was scheduled. Gresham's new counsel filed an amended motion for withdrawal of the plea and asserted that Gresham made his plea under duress – that Gresham felt compelled to enter the plea because his counsel was not prepared for trial.

At the hearing on the motion, Mizerak testified that he was appointed to the case as a conflict attorney, that motions had already been filed by prior counsel, and that he received the entire case file

---

[1] On the burglary count, he was sentenced to 20 years, 365 days to be served in a detention center and the rest on probation, and fined $1,000. On Count 2, possession of tools for the commission of a crime, he was sentenced to five years probation to run consecutive to Count 1 and fined $1,000. At the time of the plea hearing, Gresham had spent 15 months in the Walton County jail.

from prior counsel. The file included their "discovery in the case and . . . investigation . . . ," including at least one interview of the witness who called 911. Mizerak explained that he eventually decided to withdraw all of Swingle's motions. Mizerak claimed that Gresham was in jail the entire time because "[w]e tried to get him a bond but to no avail." While the record shows that Gresham was granted bond on October 5, 2007 for $10,000, according to appellate counsel Gresham was never able to make bond.

Mizerak testified that he went to the jail to meet with Gresham "three or four times at the most," in the nine months of his representation. He testified that he was in contact with Gresham "via phone or letters three or four or five times also." But he admitted that he did not respond to Gresham's letters, which included requests that his case be tried immediately. He also essentially conceded that at one point, "we may have specifically asked Mr. Gresham not to call anymore," which was consistent with his practice with other clients.

At the time, Mizerak had between 100 and 200 cases across northeast Georgia, and he was in court every day. He testified that he missed three to four court dates for every client. Later, however, he testified that his busy schedule "doesn't cause me to miss court. It causes me to re-schedule court a lot, but . . . my schedule or caseload doesn't overwhelm me to the point that I'm missing court or not covering cases or not doing what I'm supposed to do."

Although Mizerak testified that he did not do any investigation of the case himself, he testified that he reviewed Swingle's file to prepare and that he spoke to all but one of the seven witnesses. He talked to the co-defendant's attorney and had a summary of the co-defendant's testimony. When asked whether he communicated anything to Gresham about what was being done in the case, Mizerak replied, "Yeah. I mean, I felt like Mr. Gresham knew exactly what was going on." But with regard to the allegations against Gresham, Mizerak remembered only that the building involved was a school, rather than a nursing home.

Mizerak testified that he fully explained and reviewed the guilty plea "Acknowledgment and Waiver of Rights form" with Gresham and that Gresham understood it. Mizerak discussed with Gresham the impact of the plea on Gresham's pre-existing probation in Hall County. And he testified that Gresham never expressed dissatisfaction with the representation. With regard to Gresham's decision to plead guilty, Mizerak testified:

> I definitely recall Mr. Gresham being very hesitant, and the
> whole time I represented him, he had a very hard time
> coming to this decision. I don't think that he made this

decision lightly, and I would say that he struggled with this decision. . . .

Gresham testified that he had been satisfied with Swingle as his attorney. He testified that Mizerak's office never accepted calls from him at the jail nor responded to his correspondence. Mizerak came to the jail three times but only discussed the case once because other people were in the room the other times. Gresham testified that he appeared in court five times without Mizerak being present. He testified that on February 18, 2008, he asked the judge to remove Mizerak as counsel and that the judge sent Gresham and Mizerak out to discuss the matter. But after their discussion, Mizerak left for lunch and never returned. The judge then refused to see Gresham without counsel.

Gresham testified that on March 3, 2008 in court, Mizerak told him that "they didn't have anything on me and that it wouldn't go anywhere and he was going to bluff them, more or less, and announce ready for trial." That same day, Gresham testified, he turned down an offer of time served. Gresham testified that at other times Mizerak made similar statements about his case. Gresham testified that Mizerak admitted not talking to any witnesses nor visiting the scene of the crime and that Mizerak never told him he had been accused of taking mantles. As a result, according to Gresham, he did not know to tell Mizerak about witnesses he had who were relevant to that allegation.

Gresham testified that the day after picking a jury, Mizerak walked in 15 minutes before the trial and said that based on his review of the case file the night before, Gresham needed to take a plea:

> [Mizerak] said that I needed to take a plea, that he had just gotten into my case file the night before and that he didn't think he could win this case. I argued with him and told him that he had told me all along that they didn't have any evidence on me, and I told him that I didn't want to plea, and I told him since Day 1, and I told Mr. Swingle since Day 1 that I had not wanted to plea, and he said, well, if they convict you, you're going to do 15 to 20 years in prison.

Gresham testified that at that moment, he felt "severely railroaded." He went on, "I knew that it was either go to trial with an unprepared lawyer[,] that he had not discussed anything with me until two days prior[,] or sign the plea and try to withdraw it. And I knew that it could be withdrawn possibly." One part of Mizerak's own testimony lends some support to Gresham's story. While on

direct by the State, Mizerak responded to a question by saying:

> Well, after we picked the jury and the night before the trial,
> I was preparing the trial notebook and just happened to look
> back at Mr. Swingle's old file and came across. . . ."

The State asked another question, and Mizerak never finished his answer.

With regard to the plea hearing itself, Gresham acknowledged that he testified under oath that his plea was knowing and voluntary and that he was "very" satisfied with his counsel. He testified that all of his plea testimony under oath was a lie but that these statements were false because "[w]hen someone's got a gun to your head, you tell whatever they want to hear, and you do it in as nice a manner as you can."

Finally, Gresham testified that he never intended to plead guilty:

> I had waited 16 months nearly . . . I turned down two pleas.
> One of the pleas offered to me on the 3rd of March was time
> served, nothing, just go on home. And I turned that down
> and told them I didn't do this, I wanted my day in court, and
> I told him that from the start, and I told Mr. Swingle that
> from the start.

We find that the trial court did not abuse its discretion in denying the motion to withdraw. The evidence supported the decision. The trial court specifically found that Gresham's testimony was not credible, which it was authorized to do. And even taking the worst testimony from Mizerak and consistent portions of Gresham's testimony, we cannot say the trial court clearly erred in finding that Gresham had failed to carry his burden of showing that Mizerak's performance was deficient and that absent that, there is a reasonable probability that Gresham would have gone to trial.

The evidence showed that Mizerak reviewed prior counsel's file, which contained investigation results and witness interviews; that Mizerak personally spoke with other witnesses; that he met with Gresham on three or four occasions; and that he thoroughly discussed the plea with him. Moreover, neither Gresham's testimony nor his questioning of Mizerak revealed what Mizerak may have seen in Gresham's file that convinced him that taking a plea was a prudent decision. Gresham did not introduce his own file or any of the letters he allegedly wrote to Mizerak during the course of the representation, and Gresham did not show what he would have told Mizerak had Mizerak taken his calls or responded to his correspondence. Also, Gresham has not argued that he would have won any of

the motions that Swingle filed, which Mizerak withdrew. In short, although Mizerak may have been overly busy, may not have spent much time with Gresham, may not have communicated with him regularly, may not clearly recall some aspects of the case, and may not have prepared for the trial very far in advance, the evidence supports the trial court's findings and its conclusion that Gresham made a knowing, voluntary and intelligent waiver of his rights and knowingly, voluntarily and intelligently entered his plea of guilty. Compare *Heath v. State*, 268 Ga. App. 235, 239 (601 SE2d 758) (2004) (prejudice shown where attorney "despite his knowledge of his client's potential defense and his wholesale lack of knowledge of the prerequisites for the crime with which his client was charged, assumed the guilt of his client and stated in open court that the acts of his client were vile and reprehensible").

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED SEPTEMBER 22, 2009.

*Virginia L. Garrard, Jennifer L. Lewis*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Walter C. Howard, Assistant District Attorney*, for appellee.