S13A0897. BELL v. THE STATE.
(749 SE2d 672)

HUNSTEIN, Justice.

Derrick Bell pleaded guilty to malice murder and related crimes in connection with the shooting death of Dominic King. Within the same term of court, Bell filed a motion to withdraw his guilty plea and later filed a motion to vacate void sentence. The trial court denied both motions, and he appeals. Finding no error, we affirm.

On September 20, 2010, Bell entered a negotiated plea to the counts of conspiracy to commit malice murder, malice murder, and criminal damage to property in the second degree and was sentenced to life imprisonment for murder and a concurrent sentence of five years imprisonment for criminal damage to property; the conspiracy count merged with the malice murder charge. The State agreed not to proceed on the remaining four counts in the indictment and withdrew its notice of intent to seek a sentence of life without parole. Nine days later, the trial court received a letter from Bell requesting to "take back" his plea. The next day as part of the plea agreement Bell testified at the trial of his three co-defendants, Tavaress Jackson, Lakeisha White, and Kendrick Sanders. On November 3, 2010, Bell's newly appointed counsel filed a written motion to withdraw his guilty

plea and subsequently filed a motion to vacate a void sentence. Following two hearings, the trial court denied both motions, and Bell appealed.

1. Bell contends that the trial court should have allowed him to withdraw his guilty plea to correct a manifest injustice. Specifically, he alleges that there was not a sufficient factual basis for his plea, he shot King in defense of another person, his assertions of fact in support of this justification defense were a claim of innocence, and the trial court failed to resolve the conflict between his waiver of a jury trial and his claim of innocence. See *North Carolina v. Alford*, 400 U. S. 25, 38, n. 10 (91 SCt 160, 27 LE2d 162) (1970).

When a defendant challenges the validity of a guilty plea, the State has the burden of showing that the plea was made intelligently and voluntarily. *Cazanas v. State*, 270 Ga. 130, 131 (508 SE2d 412) (1998). The State may meet its burden by showing on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing. *Loyd v. State*, 288 Ga. 481 (2) (b) (705 SE2d 616) (2011). A defendant may withdraw a guilty plea for any reason prior to sentencing, but can withdraw the plea after sentencing only to correct a manifest injustice. *Maddox v. State*, 278 Ga. 823 (4) (607 SE2d 587) (2005); Uniform Superior Court Rule 33.12. Although we have declined to define "manifest injustice," which will vary depending on the case, we have noted that "withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges." *State v. Evans*, 265 Ga. 332, 336 (3) (454 SE2d 468) (1995).

The transcript of the plea hearing shows that the State presented the following factual basis in support of the guilty plea. The victim, Dominic King, had a relationship with Debra Mulkey, who was also in a relationship with Lakeisha White. Tavaress Jackson received a call at his home from White, who said that King was pointing a gun at her head. Bell, Jackson, and Sanders ran to Mulkey's house. Bell had a nine-millimeter pistol, and Jackson had a MAC-11. Bell heard an argument, opened the door, and fired two shots, hitting King in the back and arm. Bell and King wrestled for the gun; once Bell retrieved it, he fled with the others, shooting a car as they were leaving. During the allocution at the plea hearing, Bell testified that he did not initially believe White, but after a second call in which White again said King had a pistol at her head, he and Jackson decided to go to Mulkey's house and get White out. When they arrived, Bell heard screaming and yelling. He looked in and saw King fighting with

Mulkey. King's back was turned to Bell. Bell fired at King because he thought King was about to shoot Mulkey. Bell admitted that King's gun was in a holster, he was not pointing the gun at anyone, and he never pulled it out of his holster. Bell fired twice, King turned around, and Bell ran towards King with the pistol aimed at him. King grabbed the pistol and fell to the floor, then released the gun after Jackson pointed his gun at King. As Bell and his co-defendants were leaving, Bell shot twice at a car parked in the yard. Bell gave similar testimony ten days later at the trial of his co-defendants, who were acquitted of the murder charges.

At the hearing on Bell's motion to withdraw his guilty plea, his trial counsel testified that he and Bell discussed the evidence to be presented at trial, including his videotaped confession, and the possible use of a justification defense. Going over the positive and negative aspects of the defense, trial counsel mentioned to Bell that the victim's back was turned toward Bell when he fired his gun and the witnesses at the scene had told police that the victim was not acting aggressively towards Bell or any other person at the time of the shooting. Trial counsel testified that he never advises clients on what to do and that it was Bell's decision to enter a guilty plea after talking with his mother and vacillating for several days between wanting to go to trial and wanting to plead guilty. Bell, who was 19, finally made his decision on the morning he was scheduled to go to trial following a meeting in which the prosecutor agreed to recommend a sentence of life with the possibility of parole if Bell pleaded guilty. Bell testified that he had discussed with his trial counsel the defense of justification, which Bell understood to be a lesser crime, and that he felt that he did not have a choice.

The colloquy between Bell and the trial court at the plea hearing shows that Bell acknowledged that he understood the charges against him and the rights he was waiving by entering a guilty plea, including the right to a jury trial, the presumption of innocence, the right to require the State to prove guilt beyond a reasonable doubt, the right to subpoena and confront witnesses, the right to testify and present evidence on his own behalf, and the right to the assistance of counsel during trial. See USCR 33.8 (B). In addition, Bell stated that he had discussed his legal rights with his attorney before signing the waiver of rights form, he understood the charges to which he was pleading guilty, he had discussed the maximum and minimum sentences with his attorney, no one had promised a benefit or threatened him into entering the plea, and he was entering it voluntarily.

Contrary to Bell's contentions on appeal, he did not make a claim of innocence at the plea hearing or enter a plea under *North Carolina v. Alford*. See *North Carolina v. Alford*, 400 U. S. at 28, 32 (defendant

testified that he had not shot the victim); see also *Minchey v. State*, 155 Ga. App. 632 (1) (271 SE2d 885) (1980) (defendant made a claim of innocence during plea colloquy when he denied possessing cocaine). Cf. *Storch v. State*, 276 Ga. App. 789 (1) (a) (625 SE2d 70) (2005) (although defendant denied the events proffered by the State, he entered a guilty plea under *Alford* to avoid prosecution as a recidivist). Instead, Bell admitted to police and testified twice under oath that he shot King, but claimed at the hearing to withdraw his plea that he never intended to kill King and pled guilty because he felt that he did not have any other choice. Assuming Bell were correct that he entered an *Alford* plea, the record shows that he was aware of the evidence against him, the availability of a justification defense, and the maximum and minimum sentences he could receive if convicted at a trial and that he made a decision to avoid the possibility of life without parole by pleading guilty. See *McKiernan v. State*, 288 Ga. 140 (2) (702 SE2d 170) (2010) (even when considered under *Alford*, trial court did not commit a manifest injustice in accepting the guilty plea despite defendant's contention that the shooting of his wife was an accident).

The trial court found that Bell made a knowing and intelligent waiver of his rights and there was a sufficient factual basis for the plea. We conclude that the record supports these factual findings. Thus, this case does not involve a manifest injustice necessitating the withdrawal of Bell's guilty plea. See *McKiernan*, 288 Ga. at 142-143.

2. Bell also contends that he had an absolute right to withdraw his guilty plea because his sentence was void. This argument is premised on his contention that the trial court imposed a term of probation that was not allowed by law as part of Bell's sentence for murder.

A defendant who knowingly enters into a plea agreement does not waive the right to challenge an illegal and void sentence. *Nazario v. State*, 293 Ga. 480, 487 (2) (d) (746 SE2d 109) (2013). Under state law, a person convicted of murder "shall be punished by death, by imprisonment for life without parole, or by imprisonment for life." OCGA § 16-5-1 (d). Georgia law does not permit consideration of probation for murder or any other offense that is punishable by life imprisonment. See OCGA § 42-8-34 (a). When a defendant is sentenced in a murder case to life imprisonment plus probation, only the portion of the sentence imposing probation is invalid. See *Brown v. State*, 246 Ga. 251 (5) (271 SE2d 163) (1980). The remedy in that situation is to remand to the trial court for it to resentence the defendant by eliminating the term of probation. See id. at 253.

In this case, the trial court did not impose an invalid sentence. It is the sentence signed by the judge, not his oral declaration, that is the

sentence of the court. See *Curry v. State*, 248 Ga. 183 (4) (281 SE2d 604) (1981). Although both the prosecutor and the trial court during the plea hearing erroneously told Bell that he would be subject to probation, the written sentence signed by the judge and defendant and filed with the clerk shows that the trial court imposed a sentence of life with parole on the murder count and a five-year concurrent term of imprisonment on the criminal damage to property count. The sentence does not include a term of probation. Because the judgment imposed a term of life imprisonment on the murder count, as provided by law, Bell's sentence was not illegal or void, and the trial court properly denied his motion to vacate void sentence.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 2013 —
RECONSIDERATION DENIED NOVEMBER 4, 2013.

*Kevin C. Armstrong*, for appellant.
*Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.