In the Supreme Court of Georgia

Decided: January 19, 2016

S15A1688.  McGUYTON v. THE STATE.

BENHAM, Justice.

Appellant James Etheridge McGuyton, Jr., faced multiple charges, including murder, relating to the November 22, 2012, shooting death of Kenneth Seek, Jr. As a result of the State's filing of a recidivist notice, appellant was facing a mandatory sentence of life without parole if convicted.   On the eve of trial, appellant entered negotiated guilty pleas, pursuant to *Alford*[1], to the separately indicted charges of murder and possession of a firearm by a convicted felon.  He was sentenced to life imprisonment with the possibility of parole.

According to the proffer of evidence presented at the guilty plea hearing, appellant was angry with Seek for dating appellant's former girlfriend.  He told his mother he was going to kill Seek.  On the evening of November 21, 2012, appellant commenced telephoning and texting Seek to arrange a meeting on a

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (91 SCt 160, 27 LEd2d 162) (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

remote rural road in McDuffie County. Appellant, accompanied by his co-indictee Rondoe Hutson, went to the arranged location and, when Seek did not arrive, appellant and Hutson returned to Hutson's house to arm themselves. Appellant told Hutson he was going to talk to Seek and if things got heated he was going to shoot him. In the early morning hours of November 22, appellant and Hutson met Seek and Donnie Joe Wilson, a friend who accompanied Seek, at the agreed-upon meeting place. Seek and Wilson were unarmed. According to a recorded statement appellant gave to investigators, he and Seek spoke briefly and then appellant took out his .45 derringer and shot Seek with a .410 slug just below the chest. Appellant shouted out for Hutson to get Wilson. When Wilson ran into the woods, Hutson retrieved a 12-gauge shotgun out of his vehicle and started pursuing the man. Appellant then removed the spent cartridge from his pistol, loaded it with a new cartridge, and shot Seek, who was still alive, at close range in the back of his head.

After calling for Wilson to come out of the woods, appellant threw Seek's body into the bed of Seek's pickup truck and drove it several miles to a place where he dragged the body into the woods. Appellant then met up with Hutson, where appellant abandoned Seek's truck before the two of them drove to

2

Hutson's house. There, appellant disposed of the spent cartridges in the trash can. Later in the morning, appellant moved Seek's body, and his clothes became covered with Seek's blood.

Responding to a 911 call from Wilson, the authorities arrested appellant and read him his *Miranda*[2] rights, after which appellant agreed to speak with investigating officers. Ultimately, appellant admitted to killing Seek and, as a result of his statement, investigators found the spent cartridges in Hutson's trash can. The murder weapon was discovered on appellant's person. Appellant also told investigators where to find Seek's cell phone that he had taken. Hutson also gave a statement, and it was consistent with appellant's.

On the Friday before his trial was to commence on Monday, an investigator employed by the District Attorney's office sought and received permission to speak with appellant. The investigator was not involved in this case, but was friends with appellant's sister and took the sister to the meeting. At the meeting, the sister was emotional, and appellant eventually stated that he wanted to plead guilty if he could be sentenced to life with the possibility of parole. Appellant also told his plea counsel the same thing, and counsel worked

---

[2] *Miranda v. Arizona,* 384 U.S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

out a plea agreement with the prosecutor. That afternoon, the trial court conducted a guilty plea hearing, at which appellant was represented by counsel. Appellant indicated he wished to enter his plea under *Alford* because, although he asserted he was not guilty, he wished to avoid the necessity of having his mother, who suffered from dementia, and his sister, who was pregnant with a high-risk pregnancy, testify against him at trial. Upon questioning, he admitted he believed it was possible that a jury could believe the evidence and convict him. The trial court accepted appellant's guilty pleas to murder and to possession of a firearm by a convicted felon. The State withdrew the recidivist petition as part of the plea agreement.

Ten days after the trial court entered conviction on the guilty pleas, appellant filed a pro se motion to withdraw the pleas. After a hearing on that motion, at which appellant was represented by new counsel, the motion was denied. Finding no error in the trial court's conclusion that the plea was voluntary, and that appellant's claim of ineffective assistance of counsel was meritless, we affirm.

1. (a) We reject appellant's assertion that the trial court may accept a guilty plea pursuant to *Alford* only if the record reflects the defendant's plea was

4

premised upon his acknowledgment of the sufficiency of the State's evidence to convict him. Here, although defendant claimed he was not guilty and stated that his main reason for pleading was in order to spare his family from testifying, he acknowledged more than once at his plea hearing that it was "possible" a jury could convict him based on the State's evidence. Even so, a defendant's acknowledgment of the sufficiency of the evidence to convict is not a prerequisite for the trial court to accept a guilty plea. So long as "a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt," the trial court may accept a guilty plea. *Alford*, supra, 400 U.S. at 37; see also *McKiernan v. State*, 288 Ga. 140, 142-143 (2) (702 SE2d 170) (2010) (affirming the denial of defendant's motion to withdraw his guilty plea to felony murder despite the defendant's assertion that the shooting with which he was charged was accidental, where the evidence showed he was motivated to plead guilty out of fear he might never be released from prison upon conviction, and in order to avoid putting his family through a trial). Normally, all that is required in order to meet constitutional muster is for the trial court to find that the record contains strong evidence of actual guilt, and for the accused to enter the plea voluntarily,

knowingly, and understandingly of the rights he was waiving by entering the plea. *Alford*, supra.

After sentencing, a defendant may withdraw a guilty plea "only to correct a manifest injustice," such as where the defendant was "denied effective assistance of counsel, or the plea was entered involuntarily or without an understanding of the nature of the charges." (Citation and punctuation omitted.) *Bell v. State*, 294 Ga. 5, 6 (1) (749 SE2d 672) (2013). A decision on a motion to withdraw a guilty plea is a matter for the sound discretion of the trial court and will not be disturbed absent manifest abuse. *Walden v. State*, 291 Ga. 260, 261 (1) (728 SE2d 186) (2012). From the record, it is apparent that the trial judge who accepted the plea properly concluded that the abundant evidence proffered by the State was sufficient to show appellant's alleged actions constituted the crimes for which he pleaded guilty. The record shows appellant fully understood the facts and circumstances surrounding the plea. It shows that he made a decision to plead guilty to avoid the possibility of a life sentence without the possibility of parole upon conviction. See *Bell v. State*, supra. 294 Ga. at 8 (1) (affirming the denial of appellant's motion to withdraw his guilty plea where appellant entered the plea to avoid life without parole). He also

made the decision in order to spare members of his family from the burden of testifying at trial. See *McKiernan,* supra, 288 Ga. at 143 (2) (where one of the motivating factors for entering a guilty plea was to avoid putting his family through a trial). Accordingly, we reject appellant's assertion that withdrawal of the pleas was required, in order to avoid a manifest injustice, as a result of insufficient evidence to support acceptance of his guilty plea. See *Stinson v. State*, 286 Ga. 499 (689 SE2d 323) (2010) (once a sentence has been entered, a guilty plea may only be withdrawn to correct a manifest injustice, such as denial of effective assistance of counsel or a showing that the plea was entered involuntarily or without an understanding of the nature of the charges).

(b) Likewise, we reject appellant's assertion that the trial court was required to grant the withdrawal of his guilty plea because he was coerced into entering the pleas by his sister, who was to be a witness at trial, and a State's investigator. Appellant asserts the pleas were entered in response to what he calls a "surreptitious" conversation he had, outside the presence of counsel, with the investigator and his sister who came together to visit him in jail. During that conversation appellant learned that his mother and sister had been subpoenaed by the State to testify at trial. The record, however, does not support his

assertion that the investigator, who was not involved in the investigation of these crimes but was a friend of appellant's sister, brought the plea deal to him. Nor does the evidence show that the jailhouse visit was surreptitious. Instead, the evidence shows defense counsel knew appellant's family wanted to speak with him before trial and that counsel approved the meeting.

Specifically, the evidence shows the investigator contacted the State's attorney prior to the meeting and offered to arrange it if approved. Appellant's plea counsel testified at the motion to withdraw hearing that the prosecutor contacted him prior to the meeting and counsel approved it, stating that he knew and trusted this investigator not to question appellant about the evidence in the case but to talk about the possibility of a plea. The investigator's undisputed testimony established that after an hour-long conversation between the three parties at the jail, appellant asked for an hour to think about how he wanted to proceed. Once appellant told the investigator he had decided to enter a plea if certain conditions could be worked out, appellant communicated his decision to his counsel and the plea was negotiated between the prosecutor and plea counsel. Although appellant testified at the withdrawal hearing that he had been coerced, and his motion counsel asserted the plea was the result of intimidation

8

and emotion, at the plea hearing he repeatedly told the court he had not been coerced. Credibility determinations are within the purview of the trial court and the court's factual findings will not be disturbed unless clearly erroneous. *Gresham v. State*, 300 Ga. App. 158 (684 SE2d 336) (2009) (involving a motion to withdraw guilty plea); see also *Niako v. State*, 271 Ga. App. 222, 226 (609 SE2d 154) (2005) (contradiction between the defendant's testimony at the plea hearing and his testimony at the motion to withdraw hearing is a matter of witness credibility for the trial court) . Despite appellant's stated motivation to spare members of his family from the burden of testifying at trial, he fails to demonstrate coercion or that his decision to enter the plea was not voluntarily made. See *DeToma v. State*, 296 Ga. 90, 92 (1) (765 SE2d 596) (2014).

2. Appellant asserts his plea counsel performed deficiently, resulting in prejudice to him, when counsel permitted a State's investigator, along with a State's witness, to engage in what he claims were plea negotiations with appellant outside counsel's presence. The claim that plea negotiations took place when appellant met with his sister and the investigator is disputed by the testimony of the investigator, the prosecutor, and appellant's plea counsel at the motion to withdraw hearing. Instead, the evidence shows the meeting at the jail

9

resulted in appellant's later decision, after time for consideration, to enter his plea if certain conditions were met. The evidence also shows that negotiations regarding the terms of the plea and the concessions to be made by the prosecutor in exchange for the plea took place only between appellant's counsel and the prosecutor. No evidence was presented that the investigator improperly discussed the facts of the case with appellant or improperly questioned appellant at the meeting. Instead, the evidence shows appellant received the sentence he bargained for when his counsel negotiated the plea at appellant's request and with his consent. Plea counsel's undisputed testimony at the motion to withdraw hearing was that appellant "loved the deal" that was reached. Appellant has failed to demonstrate either that plea counsel's performance was deficient with respect to the manner in which the plea was negotiated or that he was prejudiced by any claimed deficiency.[3]

---

[3] Appellant suggests for the first time on appeal that plea counsel's performance was deficient because he should have adequately explained to appellant that eligibility for parole after thirty years would result in his being eligible only after reaching age seventy-eight. In fact, the record is devoid of any evidence that plea counsel did not fully explain to appellant that he would not be eligible for parole until the expiration of thirty years served on good behavior. Instead, the plea hearing transcript reflects the judge carefully examined appellant about his satisfaction with the advice and counsel provided by plea counsel, and appellant repeatedly responded that he fully understood the consequences of his plea and had no remaining questions concerning the plea. Moreover, this Court will not rule upon issues that were not raised and ruled upon below. *Haskell v. Haskell*, 286 Ga. 112 (686 SE2d 102) (2009).

10

Appellant also asserts plea counsel rendered deficient performance that prejudiced him by failing to object during the plea hearing to the prosecutor's inaccurate statement concerning the evidence against appellant. During the State's proffer of evidence, the prosecutor stated that the bullet taken from the victim's body was a "100 percent" match to the gun found on appellant. In fact, the crime lab report stated the slug fragments removed from the victim's body could neither be identified nor eliminated as being fired from appellant's gun. Instead, the report concluded that the slug was consistent with being fired from a .45 caliber pistol like the one found on appellant, and that it was the cartridge case placed into evidence and submitted to the crime lab that was matched to the pistol found on appellant. At the motion to withdraw hearing, plea counsel testified and acknowledged that he committed a mistake by failing to notice and object to the prosecutor's inaccurate statement regarding the factual basis for the charges.

The evidence, however, supports the trial court's finding in the order denying the motion to withdraw that notwithstanding this minor inaccuracy in the prosecutor's proffer at the plea hearing, the evidence of defendant's guilt was overwhelming, including his own confession, and met the standard of

Uniform Superior Court Rule 33.9, requiring the judge accepting the guilty plea to determine that a factual basis exists for the plea.  We conclude that even if the erroneous testimony about the results of ballistic testing had been stricken from the record in response to an objection by plea counsel, appellant failed to show that the plea would not have been accepted or that he would have withdrawn his plea.  The two-pronged standard of the familiar *Strickland*[4] test for establishing ineffective assistance of counsel is applicable to claims of ineffective assistance in a guilty plea proceeding.  *Hill v. Lockhart*, 474 U.S. 52 (106 SCt 366, 88LEd2d 203) (1985).  Here, appellant has failed to demonstrate prejudice resulted from plea counsel's alleged deficient performance in failing to object to the prosecutor's erroneous testimony about the bullet, and we reject his claim of ineffective assistance of counsel in this regard.

    Judgment affirmed.  All the Justices concur.

---

[4] *Strickland v. Washington*, 266 U.S. 688 (104 SCt 2052, 80 LEd2d 674) (1984).