**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 11, 2021**

# In the Court of Appeals of Georgia

A21A0235. HUTCHERSON v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Kevin Hutcherson was convicted of several counts stemming from an armed robbery, aggravated sodomy, and kidnapping. He appeals from the denial of his motion for new trial, arguing (1) the general grounds, (2) that a pre-trial photo identification procedure was unduly suggestive, and (3) that the trial court should have granted his pre-trial motion to withdraw a guilty plea to one count of criminal attempt to commit sodomy.

Construed in favor of the verdict,[1] the evidence shows that in March 2014, T. P. was working alone during the night shift at a convenience store when Hutcherson walked in shortly after midnight. T. P. and Hutcherson spoke briefly about what he

---

[1] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

could purchase to eat, and Hutcherson then grabbed T. P. and held a knife to her neck, demanding money from the store and threatening to stab her if she did not comply. T. P. gave him money from the cash register, and Hutcherson then forced her at knife-point to walk to the store bathroom. Once in the bathroom, Hutcherson ordered T. P. to remove her clothes, tied her hands behind her back with a phone charging cable , and forced T. P to perform oral sex on him, again threatening to stab her. Hutcherson then twice unsuccessfully attempted to have anal sex with T. P. and subsequently told her he was going to take her home with him.

While T. P. was still restrained and disrobed, Hutcherson marched her out of the store to a dark blue Ford pickup truck parked in an adjacent parking lot. Hutcherson drove away with T. P., and when the chance arose, T. P. jumped out of the vehicle when Hutcherson stopped at a traffic light. In the process, T. P. fell, knocking her glasses off and chipping her tooth; she then quickly ran to a nearby gas station, and the employees took her in and called the police. Hutcherson immediately sped away.

T. P. gave responding police a description of Hutcherson and the blue Ford pickup truck, and police put out a radio call to look for the truck, which had been reported stolen. Minutes later, an officer spotted a vehicle matching the description

and attempted to stop the vehicle. The driver, who was dressed in the same clothes as Hutcherson, sped up, evaded three pursuing police cruisers, and eventually bailed out of the vehicle on foot. The driver was not apprehended at that time.

Later, police searched the intersection where T. P. had jumped out of the truck, which she described as being dirty and full of trash. They found T. P.'s glasses, a traffic citation for a person that turned out to be the owner of the truck, and a wallet containing a driver's license, debit card, and social security card belonging to Hutcherson.

Based on another offense, Hutcherson was arrested in a nearby jurisdiction a few hours later, and after reading him his *Miranda*[2] rights, police interviewed him about the robbery and kidnapping of T. P. Hutcherson denied involvement but admitted that he had been in the area at the time of the robbery, and he could not account for how his wallet ended up in the intersection where police found it. Hutcherson also admitted wearing clothing that matched the description given by T. P.

T. P. later identified Hutcherson from a photo lineup, and he was charged with armed robbery, possession of a knife during the commission of a felony (four counts),

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 2817) (1966).

3

aggravated sodomy, criminal attempt to commit aggravated sodomy, kidnapping, and theft by receiving stolen property (the truck). One count of possession of a knife was nolle prossed, and Hutcherson entered a negotiated guilty plea to criminal attempt to commit aggravated sodomy. He was tried on the remaining seven counts, and a jury found him guilty as to each. He moved to withdraw his guilty plea and for a new trial, and he now appeals from the denial of both.

1. Hutcherson first contends that the trial court erred by failing to grant him a new trial on the general grounds, arguing that the verdict was contrary to the evidence, and the trial court should have granted a new trial based on the conflicts in the evidence. But as summarized above under the proper standard of review, the evidence was sufficient to support the guilty verdict,[3] and

> [a] motion for new trial on [the general] grounds, however, is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court. In its order denying [Hutcherson's] motion for new trial, the trial court recited it had [reviewed the record] and found Smith was not entitled to a new trial on the general grounds. The trial court having exercised its discretion as the thirteenth juror, and this Court having found the evidence was sufficient

---

[3] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

to support the verdict, we find no abuse of discretion in its denying the motion for new trial.[4]

2. Hutcherson also argues that a pre-trial photo identification of himself was unduly suggestive. Without citing the record, he asserts that police showed T. P. his driver's license when it was recovered overnight and asked her if the photo matched her attacker. This, he argues, would have tainted her subsequent identification of him that occurred the day after the robbery in a formal photo lineup procedure.

At the outset, we note that T. P. denied that police showed her Hutcherson's license. Pretermitting whether T. P. actually saw Hutcherson's driver's license, however, the record reveals no reversible error.

> If an out-of-court identification by a witness is so impermissibly suggestive that it could result in a substantial likelihood of misidentification, evidence of that out-of-court identification violates due process and is inadmissible at trial. This Court employs a two-step process in examining a trial court's admission of identification evidence for error. First, we review a trial court's determination that a lineup was not impermissibly suggestive for an abuse of discretion. An identification procedure is not impermissibly suggestive unless it leads

---

[4] *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017). See also *Wilcox v. State*, 310 Ga. 428, 432 (2) (851 SE2d 587) (2020) (declining to review a challenge on the general grounds because "the trial court alone is the 'arbiter of the general grounds'"), quoting *Wilson v. State*, 302 Ga. 106, 109 (II) (d) (805 SE2d 98) (2017).

5

the witness to the virtually inevitable identification of the defendant as the perpetrator[] and is the equivalent of the authorities telling the witness, "This is our suspect." Second, if a trial court properly concludes that the State employed an impermissibly suggestive pre-trial identification procedure, the issue becomes whether, considering the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. If, however, a trial court properly determines that the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.[5]

Here, with respect to Hutcherson's driver's license, there is no evidence that police told T. P. that the license was the person who assaulted and abducted her. The evidence is undisputed that police found the license in the road along with a traffic citation of another individual (the truck's owner) and were still trying to sort out which, if either, of these individuals was involved. T. P. described the truck being full of trash, and neither police, nor T. P. knew whether or how the license was connected to the truck or its driver on the night in question. Thus, police were not in a position to suggest, nor is there evidence that they did suggest, that the person depicted in the driver's license was the perpetrator.

---

[5] (Citations and punctuation omitted.) *Thomas v. State*, 310 Ga. 579, 585 (4) (853 SE2d 111) (2020).

6

Furthermore, the formal photo lineup was done by an unbiased presenter and included six similarly composed photos of men with similar skin color, hairstyle, weight, age range, and facial hair. None of the individuals had distinguishing tattoos, jewelry, or disfigurement. The presenter explained the procedure, and T. P. signed a form indicating in part her understanding that "[t]he person who committed the crime *may or may not* be in this line-up."[6] Upon seeing Hutcherson's face, T. P., "paused briefly . . . started shaking, tears started welling up in her eyes, and then she said that appeared to be the offender." T. P. also wrote on the instruction form that she was "certain" about her identification "based off his eyes."

Based on these circumstances, including the procedure of the formal lineup and T. P.'s ample opportunity to become familiar with Hutcherson's appearance, we discern no abuse of discretion on the part of the trial court in admitting T. P.'s identification of Hutcherson from the photo lineup.

3. Last, Hutcherson challenges the trial court's denial of his motion to withdraw his guilty plea, arguing that he lacked mental capacity. Approximately two months prior to trial, on March 4, 2015, Hutcherson entered a negotiated guilty plea to one count of criminal attempt to commit aggravated sodomy and was sentenced to

_____

[6] (Emphasis in original.)

7

twenty-five years on that count. In April 2015, Hutcherson moved to withdraw his guilty plea, and after a hearing, the trial court denied the motion. The trial on the remaining counts ensued in May, and the jury found him guilty.

> When a defendant attacks the validity of a guilty plea on direct appeal, the State has the burden of showing that the plea was made intelligently and voluntarily. The State may meet its burden by showing on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing. A defendant may withdraw a guilty plea for any reason prior to sentencing, but can withdraw the plea after sentencing only to correct a manifest injustice. Although [there is no precise definition for] "manifest injustice," which will vary depending on the case, . . . withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges.[7]

"A decision on a motion to withdraw a guilty plea is a matter for the sound discretion of the trial court and will not be disturbed [on appeal] absent manifest abuse."[8]

---

[7] (Citations and punctuation omitted.) *Graham v. State*, 300 Ga. 620, 620-621 (797 SE2d 459) (2017), quoting *Bell v. State*, 294 Ga. 5, 6 (1) (749 SE2d 672) (2013).

[8] *McGuyton v. State*, 298 Ga. 351, 353 (1) (a) (782 SE2d 21) (2016).

Here, Hutcherson argues that he was suffering from a legal impairment at the time of his plea hearing, noting that his counsel requested that he undergo additional psychological evaluation. The waiver form signed by Hutcherson shows that he was under the care of a psychiatrist, and he had taken mental health medication.

Nevertheless, the record supports the trial court's exercise of discretion to deny his motion to withdraw. The forms that he and his plea counsel signed indicate that he understood the charged offenses, understood the maximum possible sentences, had conferred with his counsel, understood his rights to a jury trial, and was satisfied with the representation he had received. Further, the transcript from the hearing on his motion to withdraw his guilty plea reflects that plea counsel met with Hutcherson seven times and explained the charges to him; in the process of these meetings, Hutcherson gained an understanding of his possibility of success at trial and the State's sentence recommendation and the mandatory minimum sentences. Plea counsel also testified that a psychological evaluation was performed, and Hutcherson was found to be competent at that time; counsel's subsequent request for evaluation was denied.[9] Last, plea counsel explained that she thoroughly explained the plea form

[9] Plea counsel explained that this request was in connection with a problem getting proper medication while Hutcherson was housed in a jail in a different county.

to Hutcherson, and he understood each of the rights he was waiving. At all times she interacted with Hutcherson, plea counsel stated that he seemed to understand their conversations and did not exhibit problems with comprehension.

Based on this record, we discern no abuse of discretion on the part of the trial court in denying Hutcherson's request to withdraw his guilty plea.[10]

*Judgment affirmed. Reese and Brown, JJ., concur.*

---

[10] See *Graham*, 300 Ga. at 621-622 (noting the trial court's authority to weigh the credibility of witnesses in exercising its discretion to deny a motion to withdraw a guilty plea).