302 Ga. 106
FINAL COPY

S17A0950.  WILSON v. THE STATE.

GRANT, Justice.

Appellant Charles Rodney Wilson was convicted of murder and related offenses in connection with the October 2012 shooting death of Jesse Howard.  Wilson now appeals, asserting various errors in the adjudication of his motion for new trial, insufficiency of the evidence, evidentiary error, and improper refusal to bifurcate the trial of certain counts.  Though none of Wilson's enumerations have merit, we do note an error in his sentencing, and we therefore affirm in part, vacate in part, and remand for resentencing.[1]

---

[1]     The crimes were committed on October 25, 2012.  Wilson was indicted by a Clarke County grand jury for malice murder (Count 1), two counts of felony murder, predicated on aggravated assault and felon-in-possession (Counts 2 and 3, respectively), aggravated assault (Count 4), possession of a firearm by a convicted felon (Count 5), and four counts of possession of a firearm during the commission of a crime (Counts 6 through 9).  At the conclusion of a trial held March 3-10, 2014, a jury found Wilson guilty on all counts, and on March 10, 2014, Wilson was sentenced to life imprisonment for murder, plus a consecutive five-year term for firearm possession during the commission of a crime and additional concurrent terms of years for the other firearm possession counts; the remaining counts were "merged."  See Division V, below.  Wilson filed a motion for new trial on April 10, 2014, which was denied on January 29, 2016. Wilson filed a notice of appeal on February 16, 2016, but this Court dismissed the appeal on August 15, 2016, upon our finding that Wilson's motion for new trial had been void because it was filed one day late; because the motion for new trial was void, the time for filing Wilson's appeal had not been tolled,

I.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed that Wilson, a convicted felon, shot and killed victim Howard on October 25, 2012.  Earlier that month, Howard had broken into Wilson's car and stolen several ounces of marijuana.  During the days that followed, Wilson sought out Howard, first at Howard's girlfriend's workplace and then at his grandmother's home.  Wilson told Howard's girlfriend to tell him that Wilson "got something for him, he going to do something to him." At Howard's grandmother's home, Howard's mother, who answered Wilson's knock at the door and told him that Howard was not there, noticed that Wilson "was standing at an angle, as if he had something on his side."

On the day of the shooting, two of Wilson's friends spotted Howard with Scotty Hawk at the mall.  Knowing that Wilson was looking for Howard, the friends followed the men as they left the mall in Howard's girlfriend's black Honda Accord and drove to Stonehenge, an Athens

and the notice of appeal was therefore untimely. Upon remittitur, the trial court granted Wilson's motion for out-of-time appeal on September 27, 2016; Wilson filed a new motion for new trial on October 11, 2016; the motion was denied on December 13, 2016; and Wilson filed a notice of appeal on December 15, 2016. The appeal was docketed to the April 2017 term of this Court and thereafter was submitted for a decision on the briefs.

neighborhood where both men lived.  One of the friends called Wilson and told him they had located Howard.  Wilson drove to Stonehenge and found Howard standing in Hawk's driveway with Hawk and two other men, Stepny Billups and Fred Hunter.

Hawk, who had noticed he was being followed and saw Wilson's car pull up, approached Wilson and asked what was going on.  Wilson had a handgun in his lap and was "talking in a rage."  After attempting to calm Wilson down, Hawk walked away from Wilson's car to talk to his neighbor.  Wilson then exited the car with his gun and called to Howard to come in the street, threatening to "whoop his ass."  Hawk told Howard to go inside because Wilson had a gun.  Howard yelled back that Wilson "ain't going to do nothing."  Wilson chambered a round, ran toward Howard, and hit him in the head with the gun; the gun fired, and Howard fell to the ground.  Wilson fled.

Police responders found Howard lying on the ground next to the Honda Accord with a fatal gunshot wound to the head.  The officers observed what appeared to be a bullet mark on the side of the Accord; according to Howard's girlfriend, the mark had not been there before the shooting.  As for

Wilson, after disappearing for several days and getting rid of his handgun, he turned himself in to law enforcement.

At trial, Billups and Hunter both testified that Wilson had struck Howard with the gun and the gun discharged almost immediately. Hawk testified that Wilson had hit Howard with the gun, Howard grabbed Wilson, and then Wilson shot Howard in the head.

The medical examiner determined that the cause of death was a gunshot wound to the head; Howard also had abrasions consistent with being struck with a gun on the forehead. The bullet had entered through Howard's left ear and exited from behind his right ear. Gunpowder stippling at the entrance wound indicated, based on its diameter and concentric pattern, that the muzzle-to-target distance was three to five inches with no obstruction. Upon questioning about the possibility that the fatal wound had been inflicted by a ricocheting bullet rather than a direct gunshot, both the medical examiner and a State crime scene reconstruction expert testified that this scenario was unlikely. Specifically, both witnesses opined that both the stippling pattern observed on the victim and the bullet's apparent trajectory were inconsistent with the possibility of a ricocheting bullet. Theorizing about the bullet mark on the Accord, the crime scene expert suggested that

two shots had been fired, one hitting the Accord and one hitting the victim. Based on the bullet's path through the victim's head, the crime scene expert also rejected the theory that the fatal gunshot had been fired simultaneously with the blow to the victim's forehead.

Wilson testified at trial that he had never intended to shoot Howard and instead intended only to hit him with the gun. He also testified that he had believed Howard was armed at the time, though investigators found no weapons on or around Howard at the scene.

Contrary to Wilson's contention, the evidence described above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Wilson was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'") (citation omitted).

## II.

Wilson contends that the verdict was contrary to "the principles of justice and equity" and "decidedly and strongly against the weight of the evidence" under OCGA §§ 5-5-20 and 5-5-21. "When properly raised in a

5

timely motion, these grounds for a new trial — commonly known as the 'general grounds' — require the trial judge to exercise a broad discretion to sit as a 'thirteenth juror.'" *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013) (citation and punctuation omitted). Wilson did timely move for a new trial on these general grounds, citing evidentiary conflicts and witness credibility issues. Following a hearing at which Wilson's counsel expressly requested that the court exercise its discretion as the "thirteenth juror," the trial court denied the motion for new trial. Wilson challenges the trial court's decision in several respects, none of which is supported by law.

(a) Wilson asserts that there is no evidence that the trial court actually exercised its discretion as the "thirteenth juror." But "the trial court need not explicitly speak of its discretion with respect to the general grounds, and unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it." *Murdock v. State*, 299 Ga. 177, 178 (2) (787 SE2d 184) (2016). This Court will thus presume, in the absence of affirmative evidence to the contrary, that the trial court did properly exercise such discretion. Compare *Butts v. State*, 297 Ga. 766, 771-772 (3) (778 SE2d 205) (2015) (presuming trial court properly exercised its discretion where the general grounds were expressly referenced at the new

6

trial hearing but summary denial order did not explicitly address its weighing of the evidence as a thirteenth juror), with *White*, 293 Ga. at 525 (reversing for consideration of general grounds where record reflected that trial court reviewed new trial motion only for legal sufficiency of the evidence); *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013) (same). Here, the trial court's attention was clearly directed to its discretion under OCGA §§ 5-5-20 and 5-5-21, and there is no indication that the court failed to exercise its discretion in denying the new trial motion.

(b) Regarding Wilson's related complaint that the trial court failed to issue express findings of fact and conclusions of law in ruling on the new trial motion, we are aware of no authority — and, indeed, Wilson has directed us to none — requiring such express findings. See *Murdock*, 299 Ga. at 178 (affirming summary denial of new trial motion based on general grounds); *Butts*, 297 Ga. at 772 (same).

(c) Wilson also attacks the denial of his new trial motion on the ground that it was decided by a different judge than the judge who had presided at his trial. But there is no prohibition on a successor judge deciding a new trial motion. Quite to the contrary, our Code expressly authorizes it in OCGA § 5-5-43: "A judge who did not try the case may, if presented with a motion for

new trial within 30 days from the date of the verdict or judgment sought to be set aside, allow the filing of, issue rule nisi thereon, and decide the motion . . . where he is presiding in the court in which the trial was had[.]"  See also *Kuhn v. State*, 301 Ga. 741, 743-744 (2) n.2 (804 SE2d 9) (2017) (our law "clearly authorizes a judge who did not try a case to preside over and decide a motion for new trial"); *State v. Harris*, 292 Ga. 92, 94-95 (734 SE2d 357) (2012) (affirming grant of new trial by successor judge).

(d)  Finally, to the extent Wilson asks this Court to review the merits of the trial court's exercise of its discretion as the thirteenth juror, we decline to do so; this Court does not sit as an arbiter of the general grounds, which are "solely within the discretion of the trial court."  *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017).  In sum, we have no basis to disturb the trial court's denial of Wilson's motion for new trial on the general grounds.

## III.

Wilson asserts that the trial court erred when, during his case-in-chief, it refused to admit evidence of victim Howard's prior drug convictions, which he contended were admissible to support the narrative that Howard was involved in the "drug lifestyle" and was thus likely to be armed at the time of Wilson's encounter with him.  Under our Evidence Code, evidence of

8

a victim's character is admissible only if it bears on a "pertinent trait of character" of the victim. OCGA § 24-4-404 (a) (2). We have previously rejected the contention that a victim's alleged involvement in the drug trade, without more, would tend to show that the victim was armed so as to support a defendant's claim of self-defense. See, e.g., *Moore v. State*, 295 Ga. 709, 712-713 (2) (763 SE2d 670) (2014) (finding no factual nexus between victim's alleged drug possession and defendant's self-defense claim). And even if evidence of Howard's involvement in the "drug lifestyle" had been relevant to contested issues in the case, this particular evidence was not of the type that would have been admissible in any event. See OCGA § 24-4-405 (a) (where character evidence is admissible other than as an essential element of a charge, such evidence must be in the form of reputation or opinion testimony); *Mohamud v. State*, 297 Ga. 532, 536 (3) (773 SE2d 755) (2015) ("as a general rule, character evidence of a victim is limited to reputation or opinion, *not* specific bad acts"). The trial court did not abuse its discretion in excluding this evidence.

## IV.

Contrary to Wilson's contention, the trial court properly denied Wilson's motion to bifurcate the trial of the counts charging him with

possession of a firearm by a convicted felon and felony murder predicated on that felon-in-possession charge. See *Ballard v. State*, 297 Ga. 248, 251 (4) (773 SE2d 254) (2015) (motion to bifurcate is properly denied where felon-in-possession count serves as predicate for felony murder); *Brown v. State*, 295 Ga. 804, 806 (3) (764 SE2d 376) (2014) (same).

V.

In its sentencing order, the trial court purported to sentence Wilson to life in prison on Counts 1, 2, and 3 (the malice murder and both felony murder counts); a five-year term consecutive to the life sentence on Count 6 (the first of the four firearm-possession-during-commission-of-a-crime counts); and five-year concurrent terms, respectively, on Counts 7 through 9 (the three other firearm possession counts). The court properly merged the aggravated assault (Count 4) with the malice murder, see *Malcolm v. State*, 263 Ga. 369, 374 (5) (434 SE2d 479) (1993), and purported to merge the felon-in-possession count (Count 5) with the felony murder count predicated thereon (Count 3). To the extent the sentencing order purports to impose a life sentence for each of the three murder counts, this was error, as a defendant may be sentenced only on a single verdict of murder where there is but one victim. See id. at 371-372. Because the evidence was sufficient to

support the jury's finding of guilt as to malice murder, the trial court should have sentenced Wilson on that count only, and the separate sentences on the two alternative felony murder counts then stood vacated by operation of law. *Hulett v. State*, 296 Ga. 49, 53 (2) (766 SE2d 1) (2014). With the felony murder counts vacated, the felon-in-possession count charged in Count 5 was improperly merged into the felony murder charged in Count 3. See id. Accordingly, we vacate that portion of the trial court's sentencing order in which it purported to impose life sentences on Counts 2 and 3 and in which it purported to merge Count 5 into Count 3, and we remand for the trial court to impose a sentence on Count 5.

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided September, 13, 2017.

Murder. Clarke Superior Court. Before Judge Stephens.

Jessica I. Benjamin, for appellant.

Kenneth W. Mauldin, District Attorney, Brian V. Patterson, James V. Chafin, Kalki Valamanchili, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.