306 Ga. 795
FINAL COPY

S19A0699.  THE STATE v. DENSON.

WARREN, Justice.

On April 14, 2014, a Brooks County grand jury indicted Javis Denson and his brother, Myron Mitchell, Jr., individually and as parties to a crime, for the felony murder (predicated on aggravated assault) of Mickey Albritton; two counts of aggravated assault, one of Albritton and the other of Earl Dasher; and three counts of possession of a firearm during the commission of a felony.  On July 29, 2017, a jury found Denson and Mitchell guilty of all counts, and thereafter, the trial court sentenced Denson to life imprisonment plus concurrent sentences.  Denson timely filed a motion for new trial, which was amended through new counsel, and argued (among other things) that "[t]he verdict [wa]s contrary to the evidence" and "the principles of justice and equity" and that it was "decided strongly against the weight of the evidence."  On December 17, 2018, after holding a hearing and considering the parties' legal briefs, the

trial court granted Denson's motion for a new trial under OCGA §§ 5-5-20 and 5-5-21.  The State then appealed.  See OCGA §§ 5-7-1 (a) (8); 5-7-2 (c).  For the reasons that follow, we affirm the trial court's grant of a new trial.

1.  The evidence presented at trial showed the following.[1]  On the evening of August 25, 2013, a large crowd of people—including Mitchell, Albritton, and Dasher—gathered at a housing project known as "the Circle." After Denson arrived at the Circle, an altercation ensued that resulted in the shootings of Albritton and Dasher.

The first eyewitness to the shooting called by the State was Dasher, who survived the shooting at the Circle.  Dasher testified that he went to the Circle that night to meet his friend, Albritton; when Dasher arrived, Mitchell was at the Circle with the intent to

---

[1] Because we are not reviewing a defendant's conviction on direct appeal, we do not review the evidence in the light most favorable to the jury's verdicts under the familiar standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).  See *State v. Hamilton*, Case No. S19A0722, 2019 WL 4144861, at *1 n.1 (Sept. 3, 2019).

fight someone, had a gun, and had been threatening to shoot Dasher. Dasher took his shirt off in preparation to fight Mitchell. Denson, who was Mitchell's brother, then arrived and exited his vehicle with a gun. At this point, Mitchell and Denson were on the other side of the street from Dasher. Dasher asked Denson to tell Mitchell to put down Mitchell's gun so Dasher and Mitchell could fight, but Denson replied, "[t]here ain't gonna be no fight," which Dasher understood to mean that Denson was going to shoot Dasher.

Meanwhile, Albritton had moved to the same side of the street as Mitchell and Denson. Albritton and Mitchell began arguing, and Albritton "rushed at" Mitchell and "lunged" to "grab" the gun away from Mitchell. According to Dasher, the first shot went off as Albritton and Mitchell were standing and "tussling" over the gun and Albritton was "trying to take the pistol"; the two men then fell to the ground. Dasher repeatedly denied that Albritton was on top of Mitchell when the two men were on the ground. After Albritton and Mitchell fell, Dasher ran across the road toward his friend Albritton (and also toward Denson and Mitchell), and Denson shot

Dasher once in the stomach and twice in the arms from about eight or nine feet away. Dasher's testimony was that Denson had not shot Albritton at this point. Dasher fell to the ground from being shot, "[s]pun around," and was shot a fourth time in the back, but did not see who fired that shot because he "was out." After he was shot, Dasher quickly "woke up" and saw Denson and Mitchell standing over Albritton and saw both men shoot Albritton while Albritton lay on the ground in the bushes.

The State next called Elton Williams, one of Albritton's acquaintances, who testified that he was at the Circle on the night of the shootings and observed Mitchell pacing back and forth with a gun in his hand, saying that he wanted to kill someone named "Isaac."[2] Elton decided to leave, and as a result, did not witness the shooting that followed. The State also called Zachary Mitchell,[3] a

---

[2] It is not clear from the record who "Isaac" is, but Elton Williams testified that "Isaac" was not Albritton or Dasher.

[3] The record does not suggest that Zachary Mitchell is related to Myron Mitchell, Jr.

friend of Albritton who was also Dasher's cousin, who also was at the Circle that night. Zachary testified that he also saw Mitchell pacing back and forth with a gun in his hand, and that he saw Denson pull up to the Circle in a vehicle and exit the vehicle with a gun in hand. According to Zachary, Albritton and Mitchell then "went to wrestling with the gun," and it looked like Albritton "was trying to take the gun" from Mitchell. Zachary witnessed the two men fall to the ground, with Albritton on top of Mitchell, before he "heard the first shot go off." Within "a second or two," Denson shot Albritton, who was still on top of Mitchell. Zachary then saw Dasher run across the street toward the three men, and that is when Denson shot Dasher. Zachary did not hear shots fired after that.

The State also called Dasher's friend, Craig Williams.[4] Craig testified that on the night of the shooting, he observed Mitchell walking "up and down" the street at the Circle with a gun on his waist, and that Mitchell appeared "very upset and angry" and kept

---

[4] The record does not suggest that Craig Williams is related to Elton Williams.

saying, "I'm about to send one of these f**k n****rs mama something to do next Saturday."  According to Craig, he saw Albritton and Mitchell start to "tussle over a gun and a gun go off."  The two men then fell to the ground with Albritton on top of Mitchell.  According to Craig, Dasher then ran toward Albritton, and that is when Denson first fired, shooting Dasher.  Mitchell then got up, "kicked at" Albritton, and yelled, "[w]hat you gonna do now?" after which Mitchell and Denson both fired shots at Albritton as Albritton was "laying lifeless on the ground."

The State also called Tysheen Glenn, a friend of Denson, who testified that he saw Denson shoot Dasher—but no one else—and that he did not see Mitchell shoot anyone.  Glenn also testified that about two years after the shooting, he borrowed a gun from Denson, which Glenn then used in an attempted armed robbery that resulted in Glenn's victim taking the gun and shooting Glenn.

The State presented evidence that Albritton's autopsy showed he was shot once in the left buttock and once, fatally, in the back.  None of the law enforcement officers who took the witness stand

testified that they found a gun on either Albritton or Dasher, and none of the eyewitnesses testified that they saw either Albritton or Dasher with a gun during the incident. But the gun that Glenn later borrowed from Denson and used in the botched robbery was recovered by law enforcement, which determined that it was the same gun used in the shooting of Albritton and Dasher.

Denson testified in his own defense. According to Denson, at around 8:30 or 9:00 p.m. on the night of the shooting, he received a phone call from his younger brother, Mitchell, who "sounded like he [was] in distress" and told Denson to come to the Circle. Denson went to the Circle with a .38 revolver, for which he had a weapons carry license. When Denson arrived at the Circle, it was dark and a "very chaotic scene with a ton of people . . . [s]eventy or eighty maybe, more than that probably," and the "atmosphere" was "[v]ery hostile." Denson found his brother and tried to defuse the situation by getting his brother to leave with him but was unsuccessful. Soon thereafter, Albritton "attacked" Mitchell. According to Denson, Mitchell and Albritton began "tussling" and fell to the ground, with

7

Albritton on top of Mitchell, and "the next thing I know I heard a gun pop." Thinking Albritton was trying to kill Mitchell, Denson shot Albritton "in self-defense of [his] brother's life." Denson testified that Dasher then came "running from across the street in the dark, and when he ran from across the street in the dark he was running directly towards me, and that's when I shot him [three times] . . . because he was running, I felt that my life was in danger as he was running across the road. I thought he was going to attack me." According to Denson, Albritton and Dasher were "two very violent individuals from what I know."

The defense also called Denson's uncle, who testified that Dasher told him that Dasher would not come to court if Denson paid Dasher $5,000.

After a four-day trial, a jury found Denson guilty of all charges. Denson filed a motion for a new trial, and after a hearing, the trial court granted Denson's motion on the general grounds, see OCGA §§ 5-5-20 and 5-5-21, because it found that "[a]lthough there is some evidence in favor of the jury's findings of guilt in this case, . . . under

8

the principles of justice and equity, the guilty verdicts on all charges are decidedly and strongly against the weight of the evidence."

2. The State contends that the trial court erred in granting Denson a new trial under OCGA §§ 5-5-20 and 5-5-21. We disagree.

"In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-20. In addition, "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21. The grounds set forth in these statutes "are commonly known as the 'general grounds' for new trial." *State v. Holmes*, 306 Ga. 647, 649 n.1 (832 SE2d 777) (2019) (citation and punctuation omitted). When the general grounds are properly raised in a timely motion, the trial judge is required "to exercise a broad discretion to sit as a 'thirteenth juror.'" *State v. Hamilton*, Case No. S19A0722, 2019 WL 4144861, at *4 (Sept. 3, 2019) (citation

9

and punctuation omitted). And "'[i]n exercising that discretion, the trial judge must consider some of the things that [he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence,'" meaning that the trial judge may grant a new trial on the general grounds "'[e]ven when the evidence is legally sufficient to sustain a conviction.'" Id. (quoting *White v. State*, 293 Ga. 523, 524 (753 SE2d 115) (2013)); see also *Holmes*, 306 Ga. at 649 n.1. This discretion is not boundless; it "should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict," but "it nevertheless is, generally speaking, a substantial discretion." *Hamilton*, 2019 WL 4144861, at *4 (citation and punctuation omitted). Moreover, we are constrained to apply the clear statutory mandate that "[t]he first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-

10

50.

(a) The State contends that the trial court's grant of a new trial for Denson on the general grounds must be reversed because the trial court "gave no indication of what factors" it considered in reaching that decision. That argument fails.

This Court recently considered and rejected a similar argument that a trial court's grant of a new trial on the general grounds must be reversed because the trial court "erred in failing to specify in detail why it believed the weight of the evidence was against the verdict." *Hamilton*, 2019 WL 4144861, at *6. In that case, we noted that "we have before rejected a challenge to the denial of a motion for new trial on the ground that the trial court did not make detailed findings regarding its exercise of discretion as a thirteenth juror" and cited *Wilson v. State*, 302 Ga. 106, 109 (805 SE2d 98) (2017), a case in which we explained that "'we are aware of no authority—and, indeed, (the defendant) has directed us to none—requiring such express findings.'" *Hamilton*, 2019 WL 4144861, at *6 (quoting *Wilson*, 302 Ga. at 109). That principle

11

applies equally here.

It is clear from the order granting Denson's motion for new trial that even though the trial court acknowledged that "there [was] some evidence in favor of the jury's findings of guilt in this case," it nonetheless concluded that "under the principles of justice and equity, the guilty verdicts on all charges are decidedly and strongly against the weight of the evidence." And it cited both OCGA § 5-5-20 and § 5-5-21 in doing so. This shows that the trial court understood the legal standard required to grant a motion for new trial on the general grounds and exercised its discretion in applying that standard. See *Wilson*, 302 Ga. at 108 ("[U]nless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it. This Court will thus presume, in the absence of affirmative evidence to the contrary, that the trial court did properly exercise such discretion." (citation and punctuation omitted)). The law does not require a trial court to provide findings regarding the factors it considered in exercising its discretion as the thirteenth juror, so long as it is clear that the trial

court applied the correct legal standard and exercised its discretion under OCGA §§ 5-5-20 and 5-5-21. Because "the State has not demonstrated that the trial court failed to exercise properly its discretion," *Hamilton*, 2019 WL 4144861, at \*6, the State's contention fails.

(b) The State also contends that the trial court abused its discretion in granting Denson a new trial on the general grounds because the evidence against Denson was "strong" and there were "no significant conflicts in the evidence," meaning that the law and facts of this case "demand the verdict that was rendered by the jury." We disagree.

The State's primary argument is that the "only conflict" in the evidence presented at trial was that "[f]ive eyewitnesses" to the shooting "testified and gave the same or similar accounts of the crime," which differed from Denson's testimony that "he acted in self-defense and defense of the co-defendant." But it is well established that a trial judge's "broad" and "substantial" discretion to sit as a "thirteenth juror" includes making determinations about

conflicts in the evidence, credibility of witnesses, and weight of the evidence. *Holmes*, 2019 WL 4144831, at *4.

Having reviewed the entire record, and considering that the trial court was authorized, as the thirteenth juror, to credit Denson's version of events and discount versions offered by other witnesses, and bearing in mind the standard of review set forth in OCGA § 5-5-50, we cannot say that the trial court abused its substantial discretion in granting Denson a new trial on the general grounds. See *Hamilton*, 306 Ga. at 686-687; *Holmes*, 306 Ga. at 653; *Hamilton*, 299 Ga. at 671; *State v. Harris*, 292 Ga. 92, 94-95 (734 SE2d 357) (2012).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 2019.
Murder. Brooks Superior Court. Before Judge Tunison.
*Bradfield M. Shealy, District Attorney, Jeremy K. Baker,*

*Michelle T. Harrison, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*N. Matthew Monroe*, for appellee.