310 Ga. 360
FINAL COPY

S20A0597. LOWERY v. THE STATE.

BOGGS, Justice.

Appellant Jim Edward Lowery challenges his 2017 conviction for felony murder and other crimes in connection with the death of Montgomery County Sheriff Ladson O'Connor, who was killed in a vehicular accident while pursuing Appellant. Appellant argues that the evidence was insufficient to support his felony murder conviction, that the trial court failed to apply the correct standard in denying his motion for new trial on the general grounds, that his pretrial statements to investigators were inadmissible because they were not knowingly and voluntarily made, and that the trial court erred in excluding evidence of Sheriff O'Connor's character. We

disagree and affirm.[1]

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. On the evening of June 15, 2015, Appellant was driving his pickup truck on a highway in Toombs County with Dixie Best as his passenger when the traffic came to a stop due to a disabled semi-truck. Two deputies of the Toombs County Sheriff's Office, who were on the scene,    saw

---

[1] Sheriff O'Connor died on June 15, 2015. On August 10, 2015, a Montgomery County grand jury indicted Appellant and his co-defendant Dixie Best for felony murder predicated on aggravated assault of a peace officer (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on fleeing or attempting to elude a police officer (Count 3), three counts of criminal attempt to commit murder against three separate pursuing officers (Counts 4, 5, and 6), four counts of aggravated assault on a peace officer (Counts 7, 8, 9, and 10), and attempting to elude a police officer (Count 11). Venue was subsequently changed to Bleckley County. At a joint trial from May 1 to 9, 2017, the jury acquitted Appellant on Counts 1, 2, 5, and 7 and found him guilty on all other counts. As to Best, the jury found her guilty on Counts 6, 10, and 11 and acquitted her on all other counts. The trial court sentenced Appellant to life in prison with the possibility of parole for felony murder (Count 3), thirty years concurrent on Counts 4 and 6, 20 years concurrent on Count 9, and five years consecutive on Count 11, and purported to merge Count 8 with Count 4 and Count 10 with Count 6. The trial court also ordered Appellant's sentence to be served concurrently with a 15-year sentence he received in Toombs County after pleading guilty to fleeing the crash scene in the instant case. Appellant filed a timely motion for new trial with trial counsel, which he amended with new counsel on August 26, 2019. After an evidentiary hearing, the trial court denied the motion on September 9, 2019. Appellant filed a timely notice of appeal. The case was docketed in this Court to the April 2020 term and submitted for a decision on the briefs.

Appellant suddenly turn his truck around, head away from the deputies, and turn down a dead-end road. A deputy noticed that Appellant's truck had a broken tail light and decided to follow him. When the deputy caught up with Appellant, Appellant sped off and failed to stop even when the deputy activated his blue lights.

A high-speed chase ensued, weaving through Montgomery and Toombs counties and involving officers from both counties' sheriff's offices, the City of Mt. Vernon Police Department, and the Georgia State Patrol. During the chase, much of which occurred after dark and on dirt roads, Appellant at times drove more than 20 miles per hour over the posted speed limits.

At one point during the pursuit, Appellant pointed a .410-gauge shotgun out of the driver-side window and fired, flattening Montgomery County Deputy Sheriff Britt Humphrey's left front tire. Officer Lance Taylor of the Mt. Vernon Police Department then took the lead in the chase, and Appellant fired multiple shots in his direction. Eventually, both officers lost sight of Appellant's truck for about five minutes due to the heavy dust kicked up during the

3

pursuit.

During that period, Sheriff O'Connor radioed Deputy Humphrey and Officer Taylor and stated that he had picked up the chase proceeding northbound on Highway 56 heading toward Uvalda. As the pursuit crossed over Gibbs Bridge Road, Appellant fired his shotgun at Sheriff O'Connor's truck. In an attempt to avoid the gunfire, Sheriff O'Connor abruptly swerved his truck to the left, which veered into a ditch, struck a culvert, and went airborne, hitting a tree at least nine feet above the ground. Sheriff O'Connor, who was not wearing his seatbelt, was ejected from the vehicle onto the ground, and his truck landed on him, killing him. The accident was not discovered until after the pursuit had ended. A spent .410-gauge shotgun shell and wadding were found near the crash. A toxicology report showed that Sheriff O'Connor's blood alcohol content at his time of death was 0.069 percent.

In the meantime, Georgia State Patrol Trooper Brian Screws picked up the chase when Appellant passed him just north of where Sheriff O'Connor crashed. The vehicle chase ended when      Trooper

Screws performed a "PIT maneuver" on Appellant's truck, hitting the vehicle, causing it to careen off the road into some trees. Appellant got out of his truck and fled on foot toward the nearby Altamaha River. Best got out of the truck and was immediately taken into custody. The next morning, Appellant was apprehended on the bank of the river after an extensive manhunt and a shootout with an officer from the Georgia State Patrol in which Appellant was shot through the left calf.

1. (a) Appellant challenges the sufficiency of the evidence to support his conviction for the felony murder of Sheriff O'Connor. Appellant argues that the evidence showed Sheriff O'Connor either died before the crash or was the victim of his own actions. However, it is not for this Court to either weigh or resolve conflicts in the evidence; those matters are left firmly within the province of the jury. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Walker v. State*, 296 Ga. 161, 163 (766 SE2d 28) (2014). Viewed in the light most favorable to the verdicts, the evidence shows that Appellant fled from the police at high  speeds,

shot at pursuing officers, and so caused Sheriff O'Connor to take evasive action that resulted in his crashing his vehicle and dying from his resulting injuries. Thus, the evidence presented at trial was sufficient to allow a rational jury to find beyond a reasonable doubt that Appellant's flight from the police caused Sheriff O'Connor's death and that Appellant was guilty of felony murder.

(b) Although Appellant does not challenge the sufficiency of the evidence as to his other convictions, we have — consistent with our current practice in murder cases — reviewed the evidence presented at trial and conclude that a rational trier of fact could have found Appellant guilty beyond a reasonable doubt of those crimes.[2]

2. Appellant contends that the trial court failed to apply the proper standard of review — merely repeating the sufficiency of the evidence standard — in denying his motion for new trial on the

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. __, __ (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

general grounds under OCGA §§ 5-5-20 and 5-5-21.[3] We disagree.

The trial court's order explicitly stated that it declined to "exercise its discretion as a 'thirteenth juror'" only after weighing "the [m]otion, the record of the case, and arguments of counsel" and finding both that it believed there was sufficient evidence for the verdict and that the verdict "[did] not violate principles of justice and equity." Accordingly, Appellant's contention is without merit. See *Hodges v. State*, ___Ga. ___ (___SE2d __) (2020). Cf. *Holmes v. State*, 306 Ga. 524, 528 (832 SE2d 392) (2019) (vacating order only citing sufficiency standard without reference to the general grounds, a weighing of evidence, or recognition of trial court's discretion).

3. Appellant argues that the trial court erred in admitting

---

[3] OCGA § 5-5-20 states: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-21 states: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence though there may appear to be some slight evidence in favor of the finding."

Appellant's pretrial statements to law enforcement officers. Specifically, Appellant asserts that his waiver of his *Miranda*[4] rights was invalid because he was suffering from fatigue and a gunshot wound when he made those waivers. We disagree.

After capture by police, Appellant was taken to a SWAT vehicle for transport by the Treutlen County sheriff. Appellant received medical treatment for his gunshot wound but did not receive painkillers or any substance that would affect his sobriety. The sheriff advised Appellant of his *Miranda* rights in the presence of a GBI agent. During the recorded conversation, Appellant complained of pain and discomfort, but his ability to communicate, reason, and remember events leading up to his arrest did not appear to be affected. Appellant never invoked his right to remain silent or to have an attorney present. In a follow-up recorded conversation with the GBI agent that same morning, after he was again advised of his rights, Appellant agreed to help look for guns he discarded while

---

[4] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

fleeing. Appellant directed the police to the location where he said he dropped the guns and walked through thick brush while assisting officers in the search.

Afterwards, and after having received medical attention at the hospital for his gunshot wound, Appellant was taken to the Toombs County Sheriff's Office, where he was interviewed by another GBI agent, after being advised of his *Miranda* rights. According to the GBI agent, Appellant appeared to understand what was being said, and Appellant signed a waiver-of-rights form. Later on, when the GBI agent asked Appellant whether he shot at any officers during the chase the night before, Appellant stated that he wanted an attorney. The GBI agent immediately ended the interview.

At a pretrial hearing, the trial court found that Appellant was advised of his *Miranda* rights, understood them, and voluntarily waived them and that his subsequent statements were given freely and voluntarily without hope of benefit or fear of injury. See *Jackson v. Denno*, 378 U. S. 368, 408 (84 SCt 1774, 12 LE2d 908) (1964). This finding will be upheld unless it was clearly erroneous. See

9

*Grier v. State*, 273 Ga. 363, 365 (541 SE2d 369) (2001).

Appellant was advised of his rights and waived them three separate times, recounted events clearly, did not appear impaired to questioning officers, assisted officers in searching for his discarded weapons through thick brush without aid, received non-sobriety-affecting medical attention for his relatively minor gunshot wound, and eventually invoked his right to an attorney. See *Norton v. State*, 293 Ga. 332, 334-335 (745 SE2d 630) (2013) (statement admissible despite defendant having taken dozens of Xanax pills and drinking alcohol because he appeared to understand his rights and was responsive to questioning); *Krause v. State*, 286 Ga. 745, 751 (691 SE2d 211) (2010) (statements voluntary despite evidence defendant consumed drugs and drank alcohol before interview and "appeared tired and fatigued when he spoke with police"). This record supports the trial court's findings.

4. Appellant argues that the trial court abused its discretion by granting the State's oral motion to bar evidence of Sheriff O'Connor's character. That contention is belied by the record. As Appellant was

10

preparing to testify, the State sought to prohibit admission of Sheriff O'Connor's character unless the defense laid a proper foundation. After hearing the defense's response, rather than bar the evidence outright, the trial court merely ruled that the character evidence they sought to admit was inadmissible "[u]ntil such time as [the defense] can . . . lay a proper foundation" and "comply with the rules of evidence[.]" Appellant, however, did not then make any effort to do so during the trial. Accordingly, Appellant's argument lacks merit.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided November 9, 2020.

Murder. Bleckley Superior Court. Before Judge Wall.
*Kathleen Strang*, for appellant.
*Timothy G. Vaughn, District Attorney, Keely K. Pitts, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.

11