310 Ga. 428
FINAL COPY

S20A1173. WILCOX v. THE STATE.

Boggs, Justice.

Appellant Namon Wilcox challenges his 2016 convictions for rape, malice murder, and other crimes in connection with the rape and subsequent stabbing death of Suzanne Stilwell.[1] Appellant

---

[1] Stilwell was killed on March 22, 2015. On August 13, 2015, a Ware County grand jury indicted Appellant and Christopher Ryan Raulerson for burglary in the first degree (Count 1), rape (Count 2), aggravated assault for attempted suffocation with a pillow (Count 3), aggravated assault with the butt of a rifle (Count 4), malice murder (Count 5), felony murder (Count 6), theft by taking a car (Count 7), criminal trespass for damaging the car (Count 8), and armed robbery (Count 9). Raulerson was also indicted for possession of a firearm by a convicted felon (Count 10). Raulerson pled guilty to the charges and received three life sentences. At a trial from May 17 to 19, 2016, where Raulerson testified as a State witness and Appellant testified on his own behalf, the jury found Appellant guilty of all charges. The trial court sentenced Appellant to concurrent terms of twenty years in prison each for burglary (Count 1) and aggravated assault (Count 3), five years for theft by taking (Count 7), twelve months for criminal trespass (Count 8); life for rape (Count 2) to run consecutively to Count 1; twenty years for aggravated assault (Count 4) to run consecutively to Count 3; life without parole for malice murder (Count 5) and for felony murder (Count 6) to run consecutively to Counts 3 and 4; and life for armed robbery (Count 9) to run consecutively to Counts 5 and 6. The trial court later ordered the felony murder count vacated by operation of law. On June 16, 2016, Appellant filed a motion for new trial, which he amended through new counsel on July 26, 2019. After a hearing on December 11, 2019, the trial court denied the motion for new trial as amended in an order filed on December 17, 2019. Appellant filed a timely notice of appeal, and the case was

contends that the evidence was legally insufficient to support his convictions and asks this Court to grant a new trial on the general grounds. We affirm.

Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. In March 2015, Ryan Raulerson lived with Appellant. Raulerson had previously rented a room from Stilwell but was kicked out due to a dispute over money. Stilwell filed suit against Raulerson to recover the allegedly stolen funds.

On the night of March 22, 2015, in need of money, Raulerson and Appellant walked to Raulerson's grandmother's house to obtain a .22-caliber rifle, which they intended to use to commit armed robbery. They first attempted to rob a home that had a U-Haul truck parked out front, believing it meant the homeowner had money. Raulerson knocked on the door and sought to lure the homeowner outside, while Appellant stood out of view holding the rifle. They abandoned the plan when they became concerned that the

docketed in this Court to the August 2020 term and submitted for a decision on the briefs.

2

homeowner may have been armed.

At Appellant's suggestion, the two men headed toward Stilwell's home. Appellant expressed his desire to rob, rape, and then kill Stilwell. Upon arriving at her home, they tried the same tactic as before: Appellant stood holding the rifle out of view while Raulerson went to knock on the front door. They once more got cold feet when the porch light turned on, the dogs began barking, and Raulerson saw Stilwell in the window. Appellant and Raulerson then ran and hid out of sight while Stilwell answered the door. They waited to leave until she went back inside.

After they left Stilwell's house, Raulerson told Appellant that he needed to rest his back. They eventually found a place to rest, being careful to avoid any area surveyed by cameras. Raulerson checked the rifle and realized it was loaded with only one bullet. He took it out, showed Appellant, and put the round back in the rifle. Appellant again expressed his intent to rape Stilwell, and the two men left to go back to her house.

As they got closer to the house, Raulerson gave Appellant the

rifle. They approached Stilwell's house from the back yard, either hopping the back fence or going through the back gate, and they both walked up to the back porch. Raulerson threw open the screen door and kicked open the back door. At that point, Appellant rushed in with the gun, shot one of Stilwell's dogs, pointed the gun at Stilwell and said, "Let me see your hands." Stilwell, standing in her nightshirt and underwear, either asked, "Well, how did you get in here?" or "Who let you in my house?" Appellant again demanded to see her hands and asked where she kept the phones. Stilwell pleaded with Appellant not to shoot her and said, "Here's a dollar and quarter. That's all I got. You can have it."

Appellant then started grabbing at Stilwell's underwear, and she began to fight him. At this point Raulerson joined the fray. The two men got Stilwell to her bed, and Raulerson held her shoulders down with his knees while Appellant held her legs. Appellant pulled his pants down to his knees and had sex with Stilwell against her will. Stilwell cried for help and fought both men. She bit Raulerson's finger and got a leg loose, kicking Appellant. Appellant punched

4

Stilwell in the stomach to get her to stop resisting. Out of concern for leaving any DNA behind, Appellant ejaculated in Stilwell's mouth. When he finished, Appellant told Raulerson to smother Stilwell with a pillow.

Despite Raulerson's efforts, even pressing his knee into her neck, Stilwell was too strong, and Raulerson was unable to smother her. Appellant, who was getting dressed, saw Raulerson and Stilwell fighting, picked up the gun from where he had left it, and hit Stilwell in the face with the butt of the rifle as many as seven times. While holding the gun on the dazed Stilwell, Appellant told Raulerson to get something to kill her with. Raulerson returned with a large kitchen knife and handed it to Appellant. Appellant hesitated for a minute or two and then handed the knife back to Raulerson and said, "No, you do it." Raulerson stabbed Stilwell in the neck two times, handed the knife to Appellant, and left the room to wash up and change. Appellant then stabbed Stilwell once in the neck, causing the third and final stab wound. Raulerson then came back and poured bleach in Stilwell's mouth and on her genitals in an

attempt to destroy DNA evidence.

Afterwards, Appellant grabbed Stilwell's keys from her dresser, and the two men left in Stilwell's car, bringing the knife and gun with them. Appellant drove the vehicle to Blackshear. They stopped at a convenience store where Raulerson got a cup of water and then continued to drive around. At some point they disposed of the murder weapon and gun and later got lost, returned to Waycross, and planned to dump the car. However, the car got stuck in the mud. While Raulerson attempted to wipe the vehicle down to remove prints, Appellant tried to set the car on fire using a map and toilet paper. Although he succeeded in starting a fire in the car, he failed to set it ablaze. The two men then left on foot, returned to their home just before daybreak, and slept.

The next day, Appellant called the police and asked to speak with them. During the discussion, he repeatedly changed his story and admitted lying to the police. Each change in the story revealed his greater involvement in the crime. He knew intimate details of the crime that had yet to be released to the public, including that

6

Stilwell had been stabbed and where the knife was hidden. During his changing account of events, Appellant told the police that Raulerson threatened his life and family, coercing him into committing the crimes, including holding a knife to his throat, forcing him to have intercourse with Stilwell against her will. At trial, while Appellant maintained that Raulerson committed the crimes and that Appellant's presence was due to a combination of duress and shock, he admitted that Raulerson never held a knife to his throat.

At trial, the State elicited testimony that Stilwell's vehicle was worth more than a few thousand dollars and that a dollar and 12 cents was found with Stilwell's body, wrapped in her bedding.

1. Appellant challenges the sufficiency of the evidence to support his convictions. Appellant challenges each conviction individually, arguing that he either was not a party to the crimes or was coerced into committing them. Separately, he also claims that he could not be guilty of burglary as he did not enter Stilwell's home "without authority" because Raulerson had permission to be there.

We disagree.

We must view the facts in the light most favorable to the verdicts. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Viewed in this manner, the evidence shows that Appellant desired to rob, rape, and murder Stilwell and — with the help of Raulerson — broke into Stilwell's home, demanded her possessions at gunpoint, raped her, tried to suffocate her with a pillow, beat her with the butt of a rifle, stabbed her to death, poured bleach on her body to hide DNA evidence, fled the crime scene in her vehicle, hid the murder weapons, and then tried to set her car on fire. In the same light, the evidence shows that neither Raulerson nor Appellant had authority to enter Stilwell's home. Raulerson was afraid to enter the home from the front door the first time he went to Stilwell's home that night and had to break down the back door to gain entry the second time. When Appellant entered the home, Stilwell asked how he got in.

As to Appellant's affirmative defense of coercion, his self-serving testimony "at most created a conflict with other evidence

8

that showed his participation in the crimes was voluntary," (punctuation omitted) *Brooks v. State*, 305 Ga. 600, 605 (826 SE2d 45) (2019) (quoting *Conaway v. State*, 277 Ga. 422, 423 (589 SE2d 108) (2003)), and "it is not for this Court to either weigh or resolve conflicts in the evidence; those matters are left firmly within the province of the jury." *Lowery v. State*, 310 Ga. 360, 362 (1) (a) (851 SE2d 538) (2020).

Regarding Appellant's contention that he did not personally perform any particular act of the crimes — be it holding the gun, moving the dollar and change, delivering the killing blow, taking the car keys, driving the car, or setting it on fire — Appellant's involvement is more than enough for the jury to conclude that he was a party to the crimes and thus guilty as if he had committed each crime himself. See OCGA § 16-2-20 (defining parties to a crime); *Butts v. State*, 297 Ga. 766, 770 (778 SE2d 205) (2015) (jury may infer common criminal intent from defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes); *Cargill v. State*, 256 Ga. 252, 253 (347

9

SE2d 559) (1986) (as to the guilt of a party to a crime for co-perpetrator's acts, "[t]he act of one [perpetrator] was the act of the other in the commission of [the crimes]").

Thus, the evidence was sufficient to authorize a rational jury to reject Appellant's coercion defense and find him guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. Appellant also asks this Court to review the trial court's exercise of discretion in denying his motion for a new trial on the general grounds. See OCGA §§ 5-5-20, 5-5-21. We decline to do so; the trial court alone is the "arbiter of the general grounds." *Wilson v. State*, 302 Ga. 106, 109 (805 SE2d 98) (2017). Having found the evidence sufficient above, we have no basis to disturb the trial court's denial of Appellant's motion for new trial on the general grounds.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided November 16, 2020.

Murder. Ware Superior Court. Before Judge Gillis.

*Bryan C. Smith*, for appellant.

*George E. Barnhill, District Attorney, Michelle C. McIntire, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.