**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 29, 2025**

# In the Court of Appeals of Georgia

A25A0766. MCWHIRTER et al. v. CLINKSCALES et al.

MCFADDEN, Presiding Judge.

On November 19, 2014, 15-month-old Alex Clinkscales died after a button battery eroded through his esophagus. His parents, individually and as the administrators of his estate, brought this medical malpractice action against the boy's pediatrician, Dr. Susan McWhirter, and her pediatric practice, Rivertown Pediatrics, P. C., alleging that Dr. McWhirter was negligent for failing to consider the possibility that Alex had ingested a foreign object when she examined him on November 6, 2014.

A jury trial resulted in a plaintiffs' verdict, on which the trial court entered final judgment. On appeal, the defendants argue that the trial court erred by admitting the testimony of one of the parents' expert witnesses, but we find no abuse of discretion

in the trial court's decision to allow the jury to hear and assess that testimony. The defendants argue that the trial court erred in denying their motion for a new trial on the general grounds, but they have not overcome the presumption that the trial court properly exercised his discretion in that regard. And the defendants argue that the trial court erred by failing to apply a statutory cap on noneconomic wrongful death damages, but we cannot consider their sole appellate argument, which which concerns whether or not the statute imposing the cap is constitutional, because it is not apparent that the trial court ruled on its constitutionality.

Because we find no merit in any of these claims of error, we affirm.[1]

1. *Facts and procedural history*

Viewed in the light most favorable to the verdict, the trial evidence showed that on November 1, 2014, Alex began vomiting, stopped eating, and showed signs that it was hard for him to swallow. He was whiny and irritable. His parents sought medical help from urgent care and received a prescription for antibiotics and instructions to follow up with Alex's pediatrician.

---

[1] Oral argument was held in this case on April 10, 2025, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A25A0766 (April 10, 2025), available at https://vimeo.com/1075661853/.

Some of Alex's symptoms persisted and on November 3, 2014, he had a black stool. The next day his parents took him to Rivertown Pediatrics for evaluation. Alex was diagnosed with a viral infection and his parents were instructed to discontinue the antibiotics and return for a previously scheduled well-child visit with Dr. McWhirter two days later, on November 6.

Alex continued to show symptoms; he was whiny, he would not eat much, and it was hard for him to swallow. At the November 6 well-child visit, the parents described those symptoms to Dr. McWhirter. Dr. McWhirter diagnosed Alex with an upper respiratory infection, prescribed another antibiotic for him, and instructed the parents to give him a nutritional supplement and return for reevaluation later in the month. She did not suspect that Alex had swallowed a foreign object and did not order a chest X-ray at the November 6 visit.

Alex's symptoms did not worsen after the November 6, 2014 visit, but he remained irritable and continued to show a lack of appetite and trouble swallowing over the next two weeks. On November 18, 2014, Alex initially seemed to be feeling slightly better. But that evening he suddenly made a "weird squeal" and began bleeding from the nose and mouth. Alex was taken to the hospital where he died, early

the next morning, of hemorrhage and cardiac arrest. A button battery had eroded through his esophagus and into a major vein.

The parents argued that Dr. McWhirter breached the standard of care by failing to consider the possibility that Alex had swallowed a foreign object when she saw him on November 6, 2014, and by failing to order a chest X-ray to rule out that possibility. They presented testimony from a pediatric emergency medicine physician who testified that, given Alex's symptoms, the applicable standard of care required Dr. McWhirter to do those things.

The parties presented competing expert witnesses on whether the battery was in Alex's esophagus on November 6, 2014, when Dr. McWhirter saw him. The defendants' expert, pediatric ear-nose-and-throat doctor Ian Jacobs, opined that Alex most likely had swallowed the battery one or two days before his death on November 19. The parents' expert, radiologist David Owens, opined that Alex most likely had swallowed a battery that had a low charge on November 1, the day his symptoms began.

Both Dr. Jacobs and Dr. Owens agreed that the level of charge in the battery would have affected the rate at which it eroded the child's esophagus. No autopsy was

conducted on Alex, so the battery was not recovered and therefore its actual charge level was not known.

The jury returned a plaintiffs' verdict of $2,000,000 to Alex's estate for pain and suffering and $2,000,000 to his parents for the value of his life.

2. *Evidentiary ruling*

Before trial, the defendants moved to exclude Dr. Owens's opinion on how long the battery had been in Alex's body. Among other things, they argued that the opinion was unreliable because it rested on speculation about the battery's level of charge. The trial court denied that motion and allowed Dr. Owens to testify to his opinion at trial. The defendants assert that the trial court abused his discretion in this way.

OCGA § 24-7-702 ("Rule 702") governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based upon sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.

OCGA § 24-7-702 (b).

"Under OCGA § 24-7-702, it is the role of the trial court to act as a gatekeeper of expert testimony." *Yugueros v. Robles*, 300 Ga. 58, 67 (793 SE2d 42) (2016). To discharge that responsibility, the "trial court must assess three aspects of proposed expert testimony — the qualifications of the expert, the reliability of the testimony, and the relevance of the testimony. . . ." *Arnold v. Fairway Mgmt.*, 376 Ga. App. 34, 39 (1) (918 SE2d 56) (2025) (citation and punctuation omitted). "We give broad deference to the trial court to fulfill this gatekeeper role. . . . We will not disturb the trial court's determination absent a manifest abuse of discretion." *Emory Univ. v. Willcox*, 355 Ga. App. 542, 544 (1) (844 SE2d 889) (2020) (citation and punctuation omitted).

This appeal concerns only whether Dr. Owens's expert testimony was reliable.[2] Reliability is a flexible, case-specific inquiry, *Miller v. Golden Peanut Co.*, 317 Ga. 22, 30 (2) (891 SE2d 776) (2023), and a trial court has "considerable leeway in deciding how to assess the reliability of [an expert witness's] opinion." *Emory Univ.*, 355 Ga. App. at 545 (2). In doing so, the court must focus on the expert's "principles and

---

[2] Below, the defendants also challenged Dr. Owens's qualifications, but they do not assert that argument on appeal.

methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms.*, 509 U. S. 579, 595 (II) (C) (113 SCt 2786, 125 LE2d 469) (1993). Accord *Johnson v. Terminal Inv. Corp.*, 374 Ga. App. 629, 634 (1) (913 SE2d 14) (2025).

At trial, Dr. Owens testified that he is a radiologist whose day-to-day practice involves drawing conclusions about a patient's condition by reviewing radiology images, using information about the patient's medical history to inform those conclusions. He testified that he employed this method to reach his conclusion that, to a reasonable degree of medical certainty, Alex swallowed the button battery on November 1, 2014.

Specifically, Dr. Owens explained that Alex's radiology images showed a button battery lodged in his esophagus; that his medical history showed he had experienced symptoms consistent with swallowing a foreign object on November 1, such as vomiting and trouble swallowing, some of which persisted until his death; and that nothing in the medical records or depositions showed that Alex exhibited symptoms of severe pain shortly before his death. Dr. Owens testified that from his review of literature and his general understanding of the effects of batteries on the body, in his opinion a fully charged battery would erode through a child's esophagus very quickly

after it was swallowed, causing the child severe pain in the process, while a battery with little to no charge would erode through the esophagus more slowly, potentially over "an extended number of days." The defendants' expert witness, Dr. Jacobs, did not disagree with this conclusion, testifying that a partially charged battery could take weeks to months before it caused damage to a child's esophagus.

Dr. Owens also opined that although no one could know with certainty the charge level of the battery in this case, given the timeline of Alex's symptoms and information obtained from the radiology image it was more likely that the battery had little or no charge and that Alex had swallowed it around the time his symptoms first appeared, on November 1.

The defendants argue that Dr. Owens's opinion is not reliable because he speculated that the button battery that Alex swallowed had little or no charge. But "the appropriate standard for assessing the admissibility of the opinion of an expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so." *Johnson*, 374 Ga. App. at 635 (1) (citation and punctuation omitted). A wholly speculative expert opinion is not admissible under Rule 702. *Swint v. Mae*, 340 Ga. App. 480, 485 (2) (798 SE2d 23) (2017). However, "when an expert's opinion is

based partially on speculation, this goes to the weight of the testimony rather than its admissibility." *Johnson*, supra (citation and punctuation omitted).

Dr. Owens's opinion is not wholly speculative. He drew conclusions based on the timing of Alex's symptoms as shown in the child's medical history and other evidence of record, his understanding from research of how batteries interact with the body when swallowed, and his experience as a doctor who considers radiology images in conjunction with medical histories as part of his regular practice. Compare *Fields v. Taylor*, 340 Ga. App. 706, 713 (2) (b) (797 SE2d 127) (2017) (affirming trial court's ruling allowing a doctor to give an opinion on the most likely cause of a patient's death based on the doctor's review of relevant medical records and other evidence regarding the death and the "utiliz[ation of] his expertise to draw a conclusion" from that information) with *Nat'l Emergency Med. Servs. v. Smith*, 368 Ga. App. 18, 28 (1) (b) (889 SE2d 162) (2023) (reversing trial court's ruling allowing an expert to give opinion testimony criticizing training policies and procedures that the expert had not seen) and *Cash v. LG Elecs.*, 342 Ga. App. 735, 740 (1) (b) (804 SE2d 713) (2017) (affirming trial court's ruling excluding an expert's opinion where the expert had created his own methodology, which had not been peer-reviewed or otherwise

obtained approval within the scientific community, the expert could not name a publication that purportedly had published an article on the methodology, and the methodology included unrealistic manipulations).

The trial court was within his discretion to allow the jury to hear Dr. Owens's testimony. "[A] trial court's gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury. Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Preferred Women's Healthcare v. Sain*, 367 Ga. App. 821, 827 (1) (888 SE2d 599) (2023) (citation and punctuation omitted). "Even if, as the defendants contend, the expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion." *Emory Univ.*, 355 Ga. App. at 545 (2) (citation and punctuation omitted). So we find no error.

3. *Motion for new trial on the general grounds*

The defendants argue that the trial court erred by failing to exercise the required discretion in denying their motion for new trial on the general grounds. In

10

that motion, they argued that the jury verdict was decidedly and strongly against the weight of the evidence. The trial court denied the motion in a one-line order that contained no analysis. We find no error.

OCGA § 5-5-21 permits the presiding judge, in his or her discretion, to grant a new trial where the verdict is "decidedly and strongly against the weight of the evidence." This is one of the so-called "general grounds" for a new trial and, "[w]hen properly raised in a timely motion, . . . require[s] the trial court to exercise a broad discretion to sit as a 'thirteenth juror.'" *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013) (citation and punctuation omitted). The trial court's discretion in this regard is substantial, but if the court fails to properly exercise that discretion (by, for example, applying the wrong standard in deciding the motion for new trial), we will vacate the order on the motion for new trial and remand for a proper exercise of discretion. Id. at 524-525 (2).

The defendants argue that we must vacate the new-trial order in this case because it was a one-line order that did not refer to the general grounds or explain the trial court's ruling. But a trial court is not required to make any express findings of fact or conclusions of law in an order denying a motion for new trial on the general

grounds, or even explicitly refer to its discretion. See *Wilson v. State*, 302 Ga. 106, 108-109 (II) (a) (b) (805 SE2d 98) (2017). While our Supreme Court has held that it must be "clear that the trial court applied the correct legal standard and exercised its discretion" in ruling on a motion for new trial on the general grounds, *State v. Denson*, 306 Ga. 795, 799 (2) (a) (833 SE2d 510) (2019), the Court has also held that "unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it. [We] will thus presume, in the absence of affirmative evidence to the contrary, that the trial court did properly exercise such discretion." *Wilson*, 302 Ga. at 108 (II) (a) (citation and punctuation omitted). See *Price v. State*, 305 Ga. 608, 613 (3) (825 SE2d 178) (2019) ("when a trial court enters an order denying a motion for new trial and, without more, recites that the new trial is refused or denied, this will be taken to mean that the judge has in the exercise of his discretion approved the verdict") (citation and punctuation omitted); *Dunlap v. State*, 351 Ga. App. 685, 687 (2) (832 SE2d 667) (2019) (applying the presumption that the trial judge properly exercised his discretion to affirm a one-line order denying a motion for new trial on the general grounds).

12

The defendants have not pointed to any affirmative evidence showing that the trial court failed to properly exercise his discretion. They merely argue that we should assume the trial court used the wrong standard in ruling on the new-trial motion because the parents argued an incorrect legal standard in opposing it. But in support of this argument the defendants cite cases that do not stand for the proposition that evidence of a *party's* erroneous argument to a court is enough to rebut the presumption that the court properly exercised its discretion. Instead, in those cases the *trial court's order* itself indicated an improper exercise of discretion. See *Holmes v. State*, 306 Ga. 524, 527-528 (2) (832 SE2d 392) (2019) (involving a trial court order that referred to the standard applicable to reviewing the sufficiency of the evidence but not the standard applicable to assessing the general grounds); *Gresham v. State*, 354 Ga. App. 835, 839 (1) (841 SE2d 484) (2020) (involving a lengthy trial court order that addressed all of the defendant's motion-for-new trial arguments in significant detail except his general-grounds argument, implying that the trial court did not perform its duty to exercise discretion with regard to that argument).

4. *Statutory cap on noneconomic damages*

After trial, the defendants moved to amend the judgment, arguing that OCGA § 51-13-1 required the damages award to be reduced to no more than $350,000. OCGA § 51-13-1 imposes limits upon the recovery of noneconomic damages in medical malpractice actions and defines noneconomic damages to include damages for pain and suffering. OCGA § 51-13-1 (a) (4).

The parents asserted several arguments in opposition to the motion to amend the judgment, including an argument that OCGA § 51-13-1 was unconstitutional and other arguments that did not concern the statute's constitutionality. The trial court denied the motion to amend the judgment in a one-line order that did not specify which of the parents' arguments, if any, he found persuasive.

On appeal, the defendants focus solely on OCGA § 51-13-1's constitutionality, in particular the application of *Atlanta Oculoplastic Surgery v. Nestlehutt*, 286 Ga. 731 (691 SE2d 218) (2010), and *Med. Ctr. of Cent. Ga. v. Turner*, 372 Ga. App. 644 (905 SE2d 858) (2024),[3] which addressed that issue. But we cannot consider that issue because the trial court did not clearly rule on it. Appellate courts do not "pass upon

---

[3] After briefing in this case was completed, our Supreme Court vacated our decision in *Med. Ctr. of Cent. Ga.* and directed us to return that case to the trial court for additional proceedings. *Med. Ctr. of Cent. Ga. v. Turner*, ___ Ga. ___ (___ SE2d ___) (Case No. S25G0132, decided June 24, 2025).

the constitutionality of an Act of the General Assembly unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge." *Nathans v. Diamond*, 282 Ga. 804, 807-808 (2) (654 SE2d 121) (2007) (citation and punctuation omitted). The trial court did not distinctly rule on the constitutionality of OCGA § 51-13-1; in denying the defendants' motion, the trial court could have agreed with the parents' argument that the statute was unconstitutional as applied to this case, but the trial court also could have agreed with one of the parents' other arguments that did not address the statute's constitutionality.

We deem abandoned any challenge the defendants might have to the trial court's ruling on those other, nonconstitutional arguments, because they have not addressed them on appeal through argument or citation of authority. See Court of Appeals Rules 25 (d) (1); *Lee v. Deutsche Bank Nat'l Trust Co.*, 373 Ga. App. 551, 552 (1) (908 SE2d 268) (2024). Consequently, the defendants have not shown reversible error.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*